UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-CV-24505-MOORE/ELFENBEIN
(Consolidated with Case No. 1:25-cv-24505-Williams/Lett)

IVAN GRANT,
ALEX LAFFITA ORTIZ,
HENRY PINTO SUMOZA,
EYONNY PRADO DURAN,
LUIS RODRIGUEZ CERUTO,
and LUIS SAME GONZALO,

      Plaintiffs,

vs.

STRATAIR AVIATION
SERVICES, LLC,

      Defendants.

_____/

### DEFENDANT'S RESPONSE TO PLAINTIFF IVAN GRANT'S
### FIRST SET OF INTERROGATORIES TO DEFENDANT

Defendant, STRATAIR AVIATION SERVICES, LLC. ("StratAir"), by and through its

undersigned counsel, hereby responds to Plaintiff IVAN GRANT's First Set of Interrogatories to

Defendant under Certificate of Service dated March 18, 2026, by responding as follows:

### INTERROGATORIES

1)    Please identify each person answering or assisting in answering these interrogatories, and his/her relationship to StratAir, as well as his/her full name, date of birth, social security number, current residential address, and all positions and job titles each such person has held with StratAir during the past five years.

      **ANSWER:**    **Andres Gonzalez, Manager & Vice President of Cargo**
                        **c/o Roger W. Feicht, Esq.**
                        **Gunster, Yoakley & Stewart, P.A.**
                        **777 S. Flagler Drive, Suite 500 East**
                        **West Palm Beach, Florida 33401**
                        **561-655-1980**

**To the extent this request seeks additional information, StratAir objects to the request as seeking sensitive personal information (social security numbers, dates of birth, and home residential addresses) that is not relevant to any claim or defense in this action.**

2) State the date Defendant first determined that a layoff or reduction in force would occur at the Miami warehouse location, identify all persons who participated in or were consulted about this decision, describe the specific business need(s) or reason(s) for the decision, and identify all documents reflecting this decision.

**ANSWER:     In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major blow to StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associate drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, seniority, and the operational needs of the business. These factors were weighed holistically. As part of this process, Plaintiff was among those selected for inclusion in the reduction in force.**

3) Describe in complete detail the process used to determine which positions would be eliminated and which employees would be selected for termination in the January 2024 layoff, identify who established and who applied any selection criteria, and identify all documents reflecting this process.

**ANSWER:     In January 2024, a major customer of StratAir informed StratAir that it had decided to reduce the number of future cargo delivery flights that it would hire StratAir to unload. This was a major blow to StratAir's work in the near future and resulted in an immediate and significant decline in anticipated revenue. As a direct result of its customer's decision, StratAir had too many employees for the projected demand for its services. Given the significant reduction in work to be performed and the associate drop in revenue, StratAir made the reasonable business decision to reduce its workforce in January 2024. StratAir ultimately laid off twenty-eight (28) employees, including Plaintiff. When management considered employees to be included in the necessary layoff, it evaluated the warehouse and cargo handling workforce based on multiple factors, including relative job performance, seniority, and the operational needs of the business. These factors were weighed holistically.**

2

4)      Identify all criteria, factors, or considerations used to select employees for the January 2024 layoff, state the weight or importance given to each criterion, state whether age or any age-correlated factor (including years of service, seniority, length of employment, proximity to retirement, compensation level, salary, or wage rate) was considered directly or indirectly, and identify all documents reflecting the application of each criterion to any employee.

**ANSWER:    See response to No. 3 above. StratAir's management considered multiple factors in the January 2024 reduction in force selection process, including relative job performance, seniority, and the operational needs of the business. These factors were weighed holistically; no single criterion was determinative. In addition, age was not considered directly or indirectly. StratAir objects to the characterization of "age-correlated factors" as argumentative and also false (factors such as "years of service, "seniority," "length of employment," "compensation level," "salary," or "wage rate" are not connected to or impacted by age).**

5)      State the specific reason(s) why Plaintiff was selected for termination, state all facts supporting each reason, identify who identified or raised each reason, state whether performance or attendance issues were cited as reasons and if so identify all specific incidents with dates, and identify all documents evidencing each reason.

**ANSWER:    During his short employment (approximately 18 months), Plaintiff Grant received negative feedback on his work performance and was subject to a written warning. On April 7, 2023, Plaintiff Grant received an Employee Warning Notice. Plaintiff Grant left his work area without first obtaining the necessary approval from his supervisor. Plaintiff Grant requested vacation time in November 2023, after StratAir's management had notified all employees that vacation/personal time off would not be approved because of peak season. Plaintiff Grant spoke to multiple supervisors to request time off. Plaintiff Grant took time off without approval. StratAir terminated his employment and subsequently re-hired him approximately seven days later. Additionally, when management considered employees to be included in the necessary layoff, Plaintiff Grant was selected because of his unsatisfactory performance in consistently and efficiently unloading cargo.**

6)      Identify all persons who participated in the decision to terminate Plaintiff, state each person's specific role in the decision, state the date(s) they participated, describe what information they considered, and identify all documents they reviewed or created in connection with the decision.

**ANSWER:    Gisela Barrera and Armando Portales Viera, in consultation with warehouse supervisors and their own observations, made the decision to recommend the termination of Plaintiff to Jorge Corral.**

3

7)      State Plaintiff's official job title(s) and position classification(s) during his employment with Defendant, including: (a) each job title held; (b) the dates during which he held each title; (c) the department or division to which he was assigned; and (d) the shift(s) he regularly worked; and (e) identify all individuals who held a supervisory or managerial position over Plaintiff at any time during his employment, and for each such individual, state their full name, job title, and the dates during which they supervised Plaintiff.

**ANSWER:    Plaintiff Grant was hired by StratAir in July 2022 as a Warehouse Handler. Plaintiff's job duties involved unloading cargo containers from aircraft, unloading packages from cargo containers, sorting unloaded packages into gaylord boxes, loading gaylord boxes into trucks for subsequent delivery, along with the reverse process for unloading delivery trucks, sorting the cargo into containers for loading onto aircraft, and loading the cargo containers onto the aircraft. Plaintiff worked the night shift. Gisela Barrera was the operations manager for the night shift.**

8)      State whether Defendant contends that Plaintiff's position was eliminated and not refilled, and if so, state whether the job duties and functions previously performed by Plaintiff were reassigned to other employees or independent contractors and to whom, state whether any employee or contractor was hired or engaged to perform the same or substantially similar work after January 2024 and if so identify each such person with their age, race, national origin, and start date, and state whether the total headcount of persons (employees plus contractors) performing warehouse or cargo handling work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

**ANSWER:    As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary.**

ACTIVE:39672227.1

9)      For each employee or independent contractor who was retained and held the same or similar position as Plaintiff, state their name, age, race, national origin, position, employment status (employee or contractor), supervisor(s), and the reason they were retained instead of terminated.

**ANSWER:    Aggregate data regarding the age and tenure of employees from prior to the RIF in January 2024 will be produced. As it relates to employees, the request seeks detailed personal information of non-party employees who are not involved in this litigation. The names of employees at StratAir are not relevant to any claim or defense in this action. To the extent the request seeks information regarding the national origins of employees, StratAir does not track this information. It would be unduly burdensome for StratAir to research the race of the hundreds of employees who worked for StratAir at the time of the January 2024. StratAir will provide information regarding the races/ethnicities of employees terminated in the January 2024 reduction in force. As it relates to independent contractors, StratAir did not engage any independent contractors. To the extent this request seeks further information, StratAir objects.**

10)     Identify all independent contractors, temporary workers, or staffing agency workers who performed warehouse or cargo handling work at the Miami warehouse location from October 1, 2023 through March 31, 2024; state for each person their name, age, race, national origin, position, start date, whether they were working as of January 13, 2024, whether they continued working after January 2024, and whether they were considered for termination as part of the January 2024 reduction in force.

**ANSWER:    Objection. The Interrogatory seeks information that is not relevant to any claim or defense in this action. Plaintiffs' Amended Complaint does not mention independent contractors, temporary workers, or staffing agency workers. In addition, Plaintiffs' claims are not based on StratAir allegedly engaging non-employees after January 2024. Plaintiffs allege that "Defendant fired Plaintiffs and other older employees with more seniority, and retained younger employees with less seniority, to perform the same or similar jobs." *See* Amended   Complaint, Paragraphs   51,   86. Therefore, whether contractors, temporary workers, or staffing agency workers were engaged either before or after the Plaintiffs were terminated have no bearing on Plaintiff's claims or any related defenses. Notwithstanding the foregoing objection, StratAir did not engage independent contractors. StratAir does not have records related to any temporary workers or staffing agency workers in its possession, custody, or control.**

11)     State the specific reasons why Mr. Grant was terminated in November 2023, state all facts supporting each reason, identify who made the decision and when, identify all documents supporting the reasons, and explain why Mr. Grant was later reinstated.

**ANSWER:    See response to No. 5 above.**

5

12)     State the specific reasons why Mr. Grant was reinstated in November or December 2023, state all facts supporting the decision, identify who made the reinstatement decision, describe what circumstances changed between his termination and reinstatement, and identify all documents relating to the reinstatement.

**ANSWER:    StratAir provided Plaintiff Grant another opportunity following his termination in November 2023 despite the fact that he took time off without approval. No circumstances changed between Plaintiff Grant's termination and reinstatement.**

13)     State whether Mr. Grant's November 2023 termination and subsequent reinstatement were considered or discussed in connection with the decision to terminate him in January 2024, and if so, identify who discussed or considered this, state when it was discussed, describe what was said or considered, state how it affected the January 2024 termination decision, and identify all documents reflecting such discussions.

**ANSWER:    Plaintiff Grant's November 2023 termination and subsequent reinstatement were considered in the connection with the decision to terminate him in January 2024. Plaintiff Grant's behavior of taking vacation/time off without approval was one of the reasons that he was selected for the RIF, in addition to his poor performance and the written disciplinary warning that he had received in April 2023.**

14)     Identify all Black employees who held warehouse handler, cargo handler, or similar positions at the Miami warehouse location from November 2023 through January 2024, and for each state their name, age, position, hire date, whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER:    Aggregate data regarding the age, position, and hire date/tenure of employees from January 2024 (prior to the RIF) will be produced. The request seeks detailed personal information of non-party employees who are not involved in this litigation. The names of employees at StratAir are not relevant to any claim or defense in this action. To the extent the request seeks further information, StratAir objects. Information regarding employees prior to the time period of the RIF decision is not relevant to any claim or defense in this action.**

6

15) Identify all employees from the Virgin Islands or Puerto Rico who held warehouse handler, cargo handler, or similar positions at the Miami warehouse location from November 2023 through January 2024, and for each state their name, age, national origin, position, hire date, whether they were selected for termination in the January 2024 layoff, and if terminated the stated reason for selection or if retained the stated reason for retention.

**ANSWER:** **StratAir does not track the national origin of its employees and, therefore, has no responsive information. However, to the extent this request seeks personal/identifying information regarding employees that is not relevant to any claim or defense in this action, StratAir objects.**

16) State the specific reasons why Mr. Grant received a written warning in April 2023, state who made the decision to issue the warning, state all facts supporting the warning, state whether the warning was considered in the January 2024 termination decision, and identify all documents relating to the April 2023 warning.

**ANSWER:** **See response to No. 5 above.**

7

ACTIVE:39672227.1

17)     Identify all employees who received written warnings or discipline for the same or similar conduct or performance issues as Mr. Grant's April 2023 warning but were NOT terminated in the January 2024 layoff, and for each state their name, age, race, national origin, the nature of their conduct or performance issues, the date(s) of their warnings or discipline, and why they were retained despite documented issues.

**ANSWER:     Objection. This Interrogatory is overly broad and unduly burdensome in that it seeks detailed personal and employment information for potentially hundreds of employees across the entire company who may have received any form of written warning or discipline at any point during their employment. StratAir employed hundreds of individuals at the time of the January 2024 reduction in force, and the Interrogatory imposes no reasonable limitations on the time frame of the disciplinary history sought, the departments or business units to which it applies, or the types of "similar" conduct or performance issues at issue. Compiling the requested information would require StratAir to undertake an exhaustive, manual review of personnel files for the entire workforce, impose significant burden on StratAir's human resources department, and generate a response disproportionate to any legitimate discovery need in this matter. StratAir further objects on the ground that the Interrogatory is impermissibly vague and ambiguous. The phrase "same or similar conduct or performance issues as Mr. Grant's April 2023 warning" lacks sufficient specificity to enable StratAir to identify the universe of employees whose records must be searched. Without a clear and agreed-upon definition of what constitutes "similar" conduct or performance issues, the Interrogatory calls for StratAir to exercise subjective judgment and speculation. StratAir objects on the ground that this Interrogatory is not proportional to the needs of the case, as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. The January 2024 reduction in force was driven by legitimate business considerations, including operational restructuring, cost reduction, and strategic realignment, and the selection of employees for separation was based on a multifactor analysis that extended well beyond any single disciplinary event. Whether an employee received a written warning at some point during their tenure was only one of numerous factors considered in the selection process, and the existence of a prior warning, standing alone, did not determine whether any individual was selected for or retained following the reduction in force. The Interrogatory rests on the flawed premise that the receipt of a written warning and selection for the reduction in force are directly and causally linked, when in fact the decision-making process involved a comprehensive evaluation of business needs, job function, skills, performance history, and other legitimate, nondiscriminatory criteria. Requiring StratAir to identify and provide granular detail on every employee who received any arguably similar discipline but was retained would yield information of marginal relevance at best, while imposing substantial burden and intruding upon the privacy interests of nonparty employees. StratAir objects to the extent this Interrogatory seeks personally identifiable information, including names, ages, races, and national origins, of nonparty employees who are not parties to this litigation and who have a reasonable expectation of privacy in their personnel records. Disclosure of such information implicates significant privacy concerns and should not be compelled absent a showing of direct relevance and a suitable protective order.**

8

18)     State whether Armando Portales Viera participated in both the decision to hire Mr. Grant in 2022 and the decision to terminate Mr. Grant in January 2024, and if so, describe his specific role in each decision, state what changed between 2022 and January 2024 regarding Mr. Grant's qualifications or performance, and identify all documents reflecting Armando's participation in both decisions.

**ANSWER:     See response to Nos. 5 and 6 above.**

19)     State all facts supporting Defendant's denial that Mr. Grant was discriminated against based on his race (Black) or national origin (Virgin Islands), including all evidence Defendant contends demonstrates non-discriminatory reasons for his termination.

**ANSWER:     Objection. This Interrogatory is overly broad and premature in that it effectively asks StratAir to marshal and present the entirety of its factual case in chief in response to a single discovery request. The Interrogatory calls upon Defendant to identify "all facts" and "all evidence" supporting its position that Mr. Grant's termination was not motivated by race or national origin, which is tantamount to requiring StratAir to prepare and disclose a comprehensive trial brief at this stage of the litigation. Courts have routinely recognized that contention interrogatories of this nature are more appropriately deferred until the close of fact discovery, after the parties have had a full and fair opportunity to conduct depositions, obtain and review documents, and develop the factual record. Requiring a premature response at this juncture risks incomplete or misleading disclosures, may prejudice StratAir's ability to develop its defense as discovery unfolds, and would impose a burden disproportionate to the needs of the case at this stage. The phrases "all facts" and "all evidence" are inherently boundless and provide no meaningful limitation, making it impossible for StratAir to determine with reasonable certainty when a complete response has been provided. Moreover, the Interrogatory conflates Defendant's factual contentions with its legal positions and theories, rendering the request ambiguous as to whether it seeks purely factual information, legal conclusions, or both.**

20)     State whether any person involved in the decision to terminate Mr. Grant had any financial incentive, bonus structure, or compensation arrangement that would benefit from reducing employee headcount or reducing payroll costs, and if so, identify each such person, describe the financial incentive, and state whether such incentives were considered or discussed in connection with the January 2024 layoff.

**ANSWER:     No person involved in the decision to terminate Plaintiff Grant had any financial incentive, bonus structure, or compensation arrangement that would benefit from reducing employee headcount or reducing payroll costs.**

9

21)     Identify all complaints, charges, or allegations of race discrimination or national origin discrimination made by any employee or former employee against StratAir from January 2022 through the present, and for each state the complainant's name, the date, the allegations, the outcome, and what corrective action (if any) was taken.

**ANSWER:     Objection. This Interrogatory is not proportional to the needs of the case as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Mr. Grant's claims arise from his inclusion in the January 2024 reduction in force, and the relevant inquiry is whether StratAir's decision with respect to Mr. Grant was motivated by discriminatory animus based on his race or national origin. The existence or nonexistence of unrelated discrimination complaints by other employees in different departments, holding different positions, under different supervisors, and involving wholly distinct factual circumstances has little, if any, bearing on whether StratAir discriminated against Mr. Grant in connection with the reduction in force. The Interrogatory appears designed to conduct a fishing expedition into StratAir's broader employment practices rather than to develop evidence directly relevant to the claims and defenses at issue. The marginal relevance of complaints involving different employees, different decision-makers, and different circumstances is substantially outweighed by the burden of compiling such information and the intrusion upon the privacy interests of the individuals involved. StratAir further objects on the ground that the Interrogatory is impermissibly vague and ambiguous. The terms "complaints," "charges," and "allegations" are not defined and could encompass a virtually unlimited range of communications, from formal EEOC charges to informal verbal statements made in the course of routine workplace interactions. Similarly, the term "corrective action" is undefined and ambiguous as to whether it refers to formal disciplinary measures, policy changes, remedial training, or other responsive steps. Without clear definitions, StratAir cannot reasonably determine the scope of the information sought, and any response would necessarily reflect StratAir's subjective interpretation of these undefined terms.**

22)     State whether Mr. Grant's race or national origin were considered, discussed, or mentioned by any decision-maker in connection with his January 2024 termination, and if so, identify who considered, discussed, or mentioned it, state when and in what context, and identify all documents reflecting such consideration, discussion, or mention.

**ANSWER:     Neither Plaintiff Grant's race or national origin were considered, discussed, or mentioned by any decision-maker in connection with his January 2024 termination.**

ACTIVE:39672227.1

23) Identify all employees or independent contractors hired or engaged to perform warehouse handling or cargo handling work at the Miami location from September 2023 through March 2024, and for each state their name, age, race, national origin, position, employment status (employee or contractor), start date, and the stated reason for the hire or engagement.

**ANSWER:** **StratAir did not engage independent contractors during or after Plaintiff's employment. To the extent the Interrogatory seeks information regarding independent contractors, it calls for the identification of a category of individuals that does not exist, and no response is possible or required. The Interrogatory is further overly broad in that it seeks detailed personal and employment information for every individual hired to perform warehouse handling or cargo handling work at the Miami location over a seven-month period, without any limitation as to job function, shift, supervisor, or connection to Mr. Grant, the January 2024 reduction in force, or the claims at issue in this case. The request sweeps in every hire at an entire facility across multiple operational functions and departments, regardless of whether those individuals had any relationship to the circumstances underlying Mr. Grant's claims. StratAir objects on the ground that this Interrogatory is not proportional to the needs of the case as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Mr. Grant's claims arise from his inclusion in the January 2024 reduction in force, which was a company-wide operational restructuring driven by legitimate business considerations. The burden of compiling the requested information for every hire at the Miami facility over a seven-month window substantially outweighs the marginal relevance, if any, of such information to Mr. Grant's individual claims. StratAir objects to the extent this Interrogatory seeks personally identifiable information, including names, ages, races, and national origins, of nonparty employees who are not parties to this litigation and who have a reasonable expectation of privacy in their personal and employment information. Disclosure of such information for potentially dozens of individuals implicates significant privacy concerns and should not be compelled absent a particularized showing of direct relevance to Mr. Grant's claims and an appropriate protective order governing the use and dissemination of confidential employee information.**

ACTIVE:39672227.1

Dated: May 1, 2026

**Nalani Alesia Gordon**
Roger W. Feicht (Florida Bar No. 84982)
rfeicht@gunster.com
lhagan@gunster.com
Nalani Alesia Gordon (Florida Bar No. 1010976)
ngordon@gunster.com
lmusco@gunster.com
GUNSTER YOAKLEY & STEWART, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone:  561-655-1980
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 1, 2026, a true and correct copy of the foregoing has been furnished by electronic mail to all parties on the Service List below.

**BRIAN H. POLLOCK, ESQ.**
brian@fairlawattorney.com
**P. BROOKS LAROU, ESQ.**
brooks@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, Florida 33146
Counsel for Plaintiffs

/s/ *Nalani Alesia Gordon*
Nalani Alesia Gordon

12

ACTIVE:39672227.1

## **VERIFICATION**

 **I declare under penalty of perjury that the foregoing is true and correct. Executed on** 4/30/2026 **, 2026.**

STRATAIR AVIATION SERVICES LLC

*Andres Gonzalez*
(Signature)

By: Andres Gonzalez

As Its:  Manager & Vice President of Cargo

ACTIVE:39010938.2