

## FairLaw Firm

135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146

TEL 305.230.4884   FAX 305.230.4844

*www.fairlawattorney.com*

May 7, 2026

Via Email Only
Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
Gunster, Yoakley & Stewart, P.A.
777 S. Flagler Drive, Suite 500 E.
West Palm Beach, FL 33401
rfeicht@gunster.com
ngordon@gunster.com

> **Re:** ***Raisyl Cepero Garcia v. StratAir Aviation Services, LLC***
> **Case No. 1:25-cv-24471-KMW**
> ***Ivan Grant, et al. v. StratAir Aviation Services, LLC***
> **Case No.: 1:25-cv-24505-KMM**
> **<u>Conferral Regarding Discovery Responses</u>**

Dear Roger and Nalani:

Please allow this letter to serve as Plaintiffs' conferral regarding StratAir's Responses and Objections to Plaintiffs' Interrogatories ("INTs"), Requests for Admission ("RFAs"), and Requests for Production ("RFPs") served on May 1, 2026, in the above consolidated actions. The discovery responses served by StratAir repeatedly rely on boilerplate objections, unsupported relevance objections, improper assertions of prematurity, blanket "assumes facts" objections, and wholesale refusals to produce plainly discoverable information central to Plaintiffs' claims and StratAir's defenses. We write in a good-faith effort to resolve these issues without Court intervention and request that StratAir withdraw the objections identified below and provide complete amended responses by **May 13, 2026**.

### I. <u>Complete Failure to Produce Documents</u>

We begin with the most fundamental deficiency: StratAir has not produced a single document in response to Plaintiffs' First Requests for Production in either consolidated matter, despite promising in its responses to produce documents in response to numerous individual requests.

In the *Grant* matter, StratAir pledged to produce, among other things: personnel files for each Plaintiff (RFP 14); communications between Corral, Portales Viera, and Barrera regarding the termination decisions (RFP 19); the organizational chart applicable to January 2024 (RFP 10); documents regarding the RIF selection criteria (RFPs 1 and 6); Plaintiff Grant's disciplinary warning (RFP 70); the applicable employee handbook (RFPs 47, 48, 79, and 84); EEOC position

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 2

statements (RFP 119); insurance declarations (RFP 115); and documents referenced in its Rule 26(a) initial disclosures (RFP 125).

In the *Cepero Garcia* matter, StratAir similarly pledged to produce: Plaintiff's complete personnel file (RFP No. 1); documents related to the decision to terminate Plaintiff's employment (RFP Nos. 2 and 3); leave request forms and communications from January 2024 (RFP No. 4); FMLA-related documents from January 2024 (RFP No. 5); Plaintiff's WhatsApp communications to management regarding his medical condition (RFP No. 6); documents regarding RIF selection criteria (RFP No. 7); all written policies and procedures governing FMLA administration, disability accommodations, and RIF procedures (RFP Nos. 15 and 16); employee handbooks and policy manuals in effect at the time of Plaintiff's termination (RFP No. 17); documents relating to allegations of Plaintiff's performance deficiencies (RFP No. 22); Plaintiffs' complete personnel files and aggregate RIF demographic data (RFP No. 23); documents supporting affirmative defenses (RFP No. 28); documents sufficient to identify positions affected by the RIF (RFP No. 50); and documents regarding positions considered in connection with the January 2024 RIF (RFP No. 51). Not a single one of these commitments has been fulfilled.

Rule 34(b)(2)(B) requires that an objecting party state whether it is withholding responsive materials; it does not permit a party to promise production and then produce nothing. StratAir's failure to produce a single document despite its array of commitments is independently improper and raises serious questions about whether StratAir has undertaken any meaningful search for responsive materials whatsoever. StratAir must produce all documents it has pledged to produce simultaneously with its supplemental responses. A continued failure to produce any documents will leave Plaintiffs no choice but to seek judicial intervention, including sanctions under Rule 37(b).

## II. Complete Failure to Respond to Plaintiff Same Gonzalo's Interrogatories

A separate and independently sanctionable deficiency exists as to Plaintiff Luis Same Gonzalo: StratAir was served with Mr. Same Gonzalo's First Set of Interrogatories on March 18, 2026, comprising nineteen interrogatories directed to the specific facts of his termination, his transfer from a Security Guard position to Warehouse Handler, the alleged performance issues StratAir has cited, the decision-makers involved, comparator employees who were retained, post-RIF staffing with non-employee workers, and all facts supporting StratAir's denial of age discrimination. Responses were due thirty days after service — on or about April 17, 2026 — pursuant to Rule 33(b)(2). As of the date of this letter, StratAir has served no response whatsoever: no answers, no objections, and no verified response of any kind.

This is not a deficient response — it is a complete non-response. The consequences are significant. Rule 33(b)(4) provides that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Because StratAir served no response at all, it has waived every objection it might otherwise have raised — including privilege — to each of the nineteen

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 3

interrogatories. StratAir must serve complete, verified answers to all nineteen of Mr. Same Gonzalo's interrogatories — without objection, all objections having been waived by operation of Rule 33(b)(4) — by May 13, 2026.

### III. Boilerplate General Objections

StratAir incorporates broad "General Objections" into virtually every RFP response "as though fully set forth therein," including objections based on privilege, overbreadth, duplicativeness, and purported obligations beyond the Federal Rules. Courts in the Southern District of Florida routinely reject this practice. General objections untethered to specific requests fail to satisfy Rule 34 and do not preserve objections. If StratAir contends a specific objection applies to a particular request, it must explain with specificity how and why. Blanket incorporation by reference is improper and should be withdrawn.

### IV. "Premature" Objections to Contention Interrogatories and Affirmative Defense Documents

StratAir repeatedly objects that interrogatories and document requests are "premature" because discovery is ongoing or because contention discovery supposedly should await the close of fact discovery. These objections are improper. Rule 33(a)(2) expressly permits contention interrogatories, and courts routinely require parties to disclose the factual bases for their claims and defenses during fact discovery. StratAir has asserted affirmative defenses and substantive defenses to Plaintiffs' claims; it must therefore disclose the facts, witnesses, and documents supporting those positions.

This objection infects numerous interrogatories and document requests across both cases, including, without limitation:

- ***Grant* matter Interrogatories**: Grant INT Nos. 17 and 19; Laffita INT Nos. 18, 19, and 21; Pinto INT Nos. 8, 9, 15, and 20; Prado Duran INT Nos. 7 and 8; Rodriguez Ceruto INT Nos. 17 and 18; and INT2-Prado Nos. 1 and 2.

- ***Grant* matter RFPs**: Nos. 78, 106, 107, 108, 109, and 110.

- ***Cepero Garcia* matter**: INT Nos. 13 and 20; and RFP No. 28.

These requests seek, among other things, the factual basis for StratAir's denial of discrimination, the reasons Plaintiffs were selected for the January 2024 RIF, the factual basis for affirmative defenses, facts supporting StratAir's contentions regarding alleged performance deficiencies, and — with respect to RFP No. 78 specifically — documents supporting StratAir's contention that Plaintiff Rodriguez Ceruto was not eligible for FMLA leave, including hours-worked calculations

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 4

and worksite employee counts. By asserting affirmative defenses — including after-acquired evidence, failure to mitigate, failure to exhaust administrative remedies, the same-decision defense, and the "not replaced by outside-protected-class" defense — StratAir placed each of them directly at issue. Discovery is already well underway, and StratAir's own responses demonstrate that it possesses responsive facts. StratAir must withdraw its "premature" objections to these requests and provide substantive responses.

## V. Relevance Objections to Comparator, Non-Party, and Workforce Information

One of the most pervasive categories of objections concerns comparator employees, retained employees, staffing agency workers, temporary workers, and independent contractors. Across both consolidated matters, StratAir objects that such information is irrelevant because Plaintiffs allegedly assert only "individual" claims, do not plead "pattern-or-practice" claims, or do not expressly reference staffing agencies or contractors in the pleadings. These objections are legally incorrect.

StratAir's relevance objections to discovery concerning staffing agency workers, temporary workers, and purported independent contractors should be withdrawn because, under controlling federal law, an individual may have more than one employer for purposes of federal employment discrimination statutes, and entities that share or co-determine the essential terms and conditions of work may be treated as joint employers. *See, e.g., Peppers v. Cobb Cty.*, 835 F.3d 1289 (11th Cir. 2016)

The joint employer test is "relatively straightforward" and turns on whether one entity, while contracting in good faith with another company, "has retained for itself sufficient control of the terms and conditions of employment" of the other company's workers such that the entities "share or co-determine those matters governing the essential terms and conditions of employment." *Id.* Under this framework, discovery into staffing-agency and contractor workers who performed work at StratAir's facility, under StratAir's supervision, or subject to StratAir's work rules is directly relevant because it bears on whether StratAir exercised the requisite control to be deemed a joint employer and, in turn, whether those workers are part of the relevant workforce for comparator and pretext analysis.

Courts applying the joint employer doctrine in the Title VII context identify the right to terminate the work relationship as the most important indicator of control, and also consider additional indicia of control such as the ability to promulgate work rules and assignments, set conditions of employment (including compensation, benefits, and hours), day-to-day supervision and discipline, and control of employee records (including payroll, insurance, and taxes). *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214 (10th Cir. 2014). These are factual issues that cannot be resolved by pleading labels (e.g., "contractor" or "staffing agency worker") and instead require discovery into how StratAir actually structured and controlled the work.

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 5

Accordingly, where Plaintiffs seek discovery about staffing agency workers and purported contractors who performed similar work, were supervised by the same StratAir managers, were subject to the same work rules, or performed Plaintiffs' duties before and after the January 2024 reduction in force, that discovery is relevant to (1) whether StratAir was a joint employer of those workers and (2) whether StratAir's asserted nondiscriminatory explanations are credible or pretextual in light of how it staffed the work before and after Plaintiffs' terminations. Because joint employment turns on control over essential terms and conditions of work, StratAir cannot defeat relevance by asserting that these individuals were "not employees" as a categorical matter; the governing test requires a fact-intensive inquiry into StratAir's retained control, and Plaintiffs are entitled to discovery targeted to those control factors. *Peppers v. Cobb Cty.*, 835 F.3d 1289 (11th Cir. 2016); *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214 (10th Cir. 2014).

Finally, StratAir's attempt to wall off staffing-agency and contractor workforce information is also inconsistent with the comparator framework applied in this Circuit, which focuses on whether individuals are "similarly situated in all material respects" based on objective similarities such as the same basic conduct, the same employment policy, the same supervisor, and similar employment or disciplinary history. *Woods v. Waste Pro of Fla., Inc.*, No. 21-12610, 2022 U.S. App. LEXIS 17392 (11th Cir. June 24, 2022). Where staffing-agency workers or purported contractors performed the same work at the same site under StratAir's supervision and rules, evidence about their treatment, retention, discipline, and post-reduction-in-force utilization is probative of whether StratAir applied its asserted criteria consistently and whether its stated reasons for Plaintiffs' selection are pretextual.

StratAir acknowledged in certain responses that staffing agency workers performed duties previously performed by Plaintiffs — having done so, StratAir cannot plausibly maintain that discovery regarding those workers is irrelevant. The Federal Rules do not limit discoverable information to categories expressly mentioned in a complaint; Rule 26(b)(1) broadly permits discovery relevant to any claim or defense. To the extent StratAir invokes privacy concerns regarding non-party employees, the proper remedy is a reasonable protective order, not wholesale refusal. Plaintiffs are willing to negotiate an appropriate confidentiality arrangement or stipulated protective order.

These objections should be withdrawn from, at minimum:

- *Grant* **matter Interrogatories**: Grant INT No. 10; Laffita INT Nos. 15 and 19; Pinto INT Nos. 7 and 18; Prado INT No. 17; Rodriguez Ceruto INT No. 10; and Prado INT2 No. 1.

- *Grant* **matter RFPs**: Nos. 9, 10, 11, 12, 13, 21, 22, 23, 25, 26, 27, 28, 29, 30, 32, 33, 36, 38, 39, 87, 109, 111, 112, 113, 123, 129, and 132 through 148.

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 6

- ***Grant* matter RFAs**: Nos. 8, 10, 11, 13, 63, 71, 76, 87, 98, 103, and 112.

- ***Cepero Garcia* matter Interrogatories**: INT Nos. 7, 8, 12, 17, 18, and 24.

- ***Cepero Garcia* matter RFPs**: Nos. 8, 9, 11, 12, 13, 18, 19, 23, 24, 26, 30, 31, 32, 33, 34, 35, 36, and 37 through 49.

- ***Cepero Garcia* matter RFAs**: Nos. 26, 28, 29, 31, 34, 35, and 36.

## VI. Refusal to Identify Comparator Employees

Across both consolidated matters, StratAir refuses to identify by name the employees retained after the January 2024 RIF who held the same or similar positions as Plaintiffs or who allegedly had comparable or worse performance records. Instead, StratAir offers only unspecified "aggregate data," conditioning even that production on execution of a confidentiality agreement. This is insufficient. Plaintiffs are entitled to identify and investigate comparator employees, including through depositions and document discovery. Aggregated anonymous data is not an adequate substitute for responsive discovery.

These objections should be withdrawn from, at minimum:

- ***Grant* matter**: Grant INT Nos. 10 and 17; Laffita INT Nos. 15 and 19; Pinto INT Nos. 7 and 18; Prado Duran INT No. 17; Rodriguez Ceruto INT No. 10; RFP Nos. 9, 21, 22, 23, 25, 26, 27, 28, 29, 30, 32, 33, 36, 38, 39, 87, 111, 112, 113, 123, 129, and 132 through 148; and RFA Nos. 8, 10, 11, 13, 63, 71, 76, 87, 98, 103, and 112.

- ***Cepero Garcia* matter**: INT Nos. 7, 12, and 24; RFA Nos. 26, 34, 35, and 36; and RFP Nos. 8, 9, 23, 33, 34, 35, 36, and 38 through 40.

StratAir must identify comparator employees by name and provide responsive demographic and employment information — including age, race, national origin, disability status where applicable, position, disciplinary history, and the reasons for retention or termination — subject to any reasonable protective order.

## VII. Evasive Non-Answer to Interrogatories Through Contested Characterization

StratAir gave substantively identical non-answers to a multi-part interrogatory served by Plaintiff Cepero Garcia and by five of the six *Grant* Plaintiffs, each of which asked StratAir to state whether it contends that the Plaintiff's position was eliminated and not refilled; whether the duties previously performed by the Plaintiff were reassigned to other employees or contractors and to whom; whether any employee or contractor was hired or engaged to perform the same or

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 7

substantially similar work after January 2024 and if so, to identify each such person with their age and start date; and whether the total headcount of persons performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

In response to Cepero Garcia INT No. 8, StratAir's entire response is: "As a result of the significant reduction in anticipated cargo volume and associated revenue, StratAir reduced the number of employees assigned to warehouse and cargo handling functions. The reduction was a headcount reduction driven by decreased workload and revenue, not an elimination of job classifications. The reduced volume of work no longer required the same staffing levels that had previously been necessary." StratAir provided word-for-word the same response to Grant INT No. 8, Laffita INT No. 5, Pinto INT No. 5, Prado INT No. 5, and Rodriguez Ceruto INT No. 5.

This recycled non-answer fails every Plaintiff equally and for the same reasons. It is not a response to the interrogatory — it is a litigation position statement dressed up as one. StratAir uses its preferred characterization of the January 2024 workforce reduction as a "headcount reduction" rather than a "position elimination" to sidestep all four prongs of the question entirely, without identifying a single position, a single job function, a single person who performed any of that work after January 2024, or the net change in total headcount.

That maneuver fails on its own terms. The first prong — whether StratAir contends the Plaintiff's position was eliminated — remains answerable even under StratAir's own framing. If the reduction eliminated no positions, StratAir must say so expressly. Instead, it substitutes a characterization for an answer, leaving each Plaintiff unable to evaluate whether the stated characterization is accurate or self-serving.

The second and third prongs are even more clearly unanswered. Whether the duties of each terminated Plaintiff were subsequently performed by any worker — and if so, by whom, at what age, and starting when — are freestanding factual questions that do not depend on whether one calls the reduction a "headcount cut" or a "position elimination." StratAir either knows who performed those duties after January 2024 or it does not, and it is obligated to say so directly for each Plaintiff. StratAir's own admission in response to Cepero RFA No. 30 — that "staffing agency workers performed some of the job duties previously performed by Plaintiff at various times from the date of Plaintiff's termination to the present" — confirms that responsive facts exist and have not been disclosed. StratAir's admission in response to Grant RFA No. 9, denying that no independent contractor, temporary worker, or staffing agency worker had their contract or engagement terminated as part of the January 2024 RIF, is similarly inconsistent with a complete absence of responsive information.

The fourth prong — the net change in total headcount — is entirely ignored by the boilerplate response. Whether the total number of persons performing warehouse, cargo, and security work at the Miami location (employees plus contractors) went up, down, or stayed flat after the January

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 8

2024 layoff is a straightforward factual question StratAir is capable of answering and must answer for each Plaintiff.

StratAir must provide complete supplemental responses to Cepero INT No. 8, Grant INT No. 8, Laffita INT No. 5, Pinto INT No. 5, Prado INT No. 5, and Rodriguez Ceruto INT No. 5, addressing each prong of the interrogatory directly: (1) whether it contends each Plaintiff's position was eliminated and not refilled; (2) whether the duties previously performed by each Plaintiff were reassigned and to whom; (3) the identity, age, and start date of any person hired or engaged to perform the same or substantially similar work after January 2024; and (4) whether the total headcount of persons performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff.

## VIII. Relevance Objections to Training, Compliance, and RIF Procedure Materials

StratAir objects to requests seeking training materials concerning the ADA, FMLA, ADEA, discrimination prevention, lawful reduction-in-force procedures, accommodations, and HR compliance on the ground that such materials are "not relevant." These objections are meritless. Whether StratAir trained its managers and HR personnel regarding anti-discrimination laws, FMLA obligations, ADA obligations, and lawful RIF procedures is directly relevant to intent, willfulness, notice, and whether StratAir took reasonable measures to comply with federal law. This issue is particularly significant given StratAir's admissions that it did not utilize written scoring criteria, did not create written evaluations or scoring sheets for any employee selected for the RIF, and did not conduct a statistical or adverse impact analysis in connection with the January 2024 layoff.

These objections should be withdrawn from, at minimum:

- *Grant* **matter**: RFP Nos. 50, 51, 52, 83, and 85; Pinto INT No. 20; and RFA No. 7.

- *Cepero Garcia* **matter**: INT No. 16; RFP No. 20; and RFAs Nos. 7 and 16.

## IX. Relevance Objections to Financial, Business Justification, and RIF Documents

StratAir objects to requests seeking financial records, revenue information, staffing analyses, budget documents, client communications, and other materials supporting the January 2024 RIF on the ground that Plaintiffs challenge only their individual selection for termination and not the RIF itself. That objection misstates the law. Financial and business justification documents are directly relevant to whether StratAir's stated reasons for the RIF and Plaintiffs' selection are credible or pretextual. Courts routinely permit discovery into financial and operational records in RIF discrimination cases. In addition, because Plaintiffs seek punitive damages where available, financial condition discovery is relevant and proportional.

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 9

These objections should be withdrawn from, at minimum:

- ***Grant* matter**: RFP Nos. 2, 3, 4, 35, 116, and 117.

- ***Cepero Garcia* matter**: RFP Nos. 7 and 14.

StratAir must produce responsive financial statements, business analyses, revenue projections, staffing analyses, client communications, and documents sufficient to establish its net worth, revenues, profits, and financial condition for tax years 2023, 2024, and 2025.

## X. Objections to ADA/FMLA Coverage, Eligibility, and Interactive Process

In the *Cepero Garcia* matter, StratAir objects that requests asking it to admit ADA coverage, FMLA coverage, FMLA eligibility, and participation in the ADA interactive process improperly call for "legal conclusions." These objections are improper. Rule 36 expressly permits requests applying law to fact. Whether an employer meets statutory coverage thresholds or whether an employee was eligible for FMLA leave are classic applications of law to fact.

These objections should be withdrawn from, at minimum, Cepero RFAs Nos. 5, 6, 7, and 16, and Cepero INT No. 13. StratAir must withdraw these objections and provide substantive amended responses.

## XI. Relevance Objections to Prior EEOC Charges, Discrimination Complaints, and Similar Claims

StratAir objects to requests concerning prior EEOC charges, discrimination complaints, FMLA complaints, ADA complaints, and related litigation involving StratAir — in both the *Grant* and *Cepero Garcia* matters — on relevance and proportionality grounds, contending that complaints by other employees have "little, if any, bearing" on Plaintiffs' individual claims. This objection is incorrect. Prior complaints alleging similar statutory violations are plainly relevant to notice, intent, willfulness, and whether StratAir maintained discriminatory practices or failed to remedy known compliance deficiencies. The requested temporal scopes are reasonable and proportional.

These objections should be withdrawn from, at minimum:

- ***Grant* matter**: Grant INT No. 21; Laffita INT Nos. 8 and 9; and RFP Nos. 53, 54, and 61.

- ***Cepero Garcia* matter**: INT No. 19; RFAs Nos. 39, 40, and 41; and RFPs Nos. 25 and 26.

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 10

## XII. <u>Improper "Assumes Facts" Objections</u>

StratAir deploys "assumes facts" objections not only in response to Requests for Admission, but also in response to Interrogatories and Requests for Production, where they are equally improper.

In the *Cepero Garcia* matter, StratAir objects to Interrogatory No. 14 — which asks whether StratAir provided Plaintiff with any FMLA notices and, if so, the type and date of each — on the ground that the interrogatory "assumes facts not in evidence regarding the nature and content of Plaintiff's communications." This objection does not excuse a substantive response. Whether or not StratAir believes that Plaintiff's communications triggered FMLA notice obligations, Interrogatory No. 14 asks a simple factual question: what FMLA notices, if any, did StratAir provide? That question stands independent of any characterization of Plaintiff's communications. StratAir's response — pointing generally to Rule 33(d) documents reflecting its standard FMLA policies — does not answer whether specific statutory notices (eligibility notices, rights and responsibilities notices, or designation notices) were actually issued to Plaintiff individually. StratAir must provide a complete, direct response to Interrogatory No. 14 without the "assumes facts" qualifier.

In the *Cepero Garcia* matter, StratAir objects to RFP No. 4 — which requests all documents relating to Plaintiff's requests for medical leave in January 2024, including request forms, emails, text messages, and communications with supervisors and HR — on the ground that the request "assumes facts, specifically that Plaintiff requested medical leave in January 2024." This objection does not excuse production. The request asks for documents that exist regardless of how the underlying communications are legally characterized. StratAir itself acknowledged in its Answer that Plaintiff communicated with StratAir about a need for time off in January 2024. Whether those communications constitute a legally cognizable FMLA leave request is a merits question; it does not determine whether documents reflecting those communications are producible. StratAir must produce all responsive documents without qualification.

StratAir similarly objects to Cepero RFP No. 10 — which requests all documents showing the job duties of each position eliminated in the January 2024 RIF and whether those duties were subsequently performed by other workers — on the ground that the request "assumes facts, specifically that positions were eliminated in the January 2024 RIF." StratAir then uses this semantic position — that the RIF was a "headcount reduction" rather than a position "elimination" — to assert that no responsive documents exist at all. This argument elevates wordplay over substance. Whether StratAir characterizes the workforce reduction as a headcount reduction or a position elimination, RFP No. 10 plainly seeks documents showing what work the terminated employees performed and whether anyone subsequently performed that same work. StratAir's own admission in response to RFA No. 30 — that staffing agency workers performed some of the job duties previously performed by Plaintiff after his termination — confirms that the underlying facts are genuinely in dispute and that responsive documents either exist or must be

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 11

affirmatively accounted for. StratAir must provide a complete response to RFP No. 10 regardless of how it characterizes the nature of the January 2024 workforce reduction.

The following *Grant* matter RFA is also infected by the same "assumes facts" deficiency and require amendment:

- **RFA No. 121**: "Admit that StratAir did not provide Plaintiff Luis Rodriguez Ceruto with written notice of his eligibility for FMLA leave in 2023 or early 2024." StratAir objected that the request "assumes facts" regarding Ceruto's eligibility for or request of FMLA leave.

Whether the predicate facts underlying any of these requests are disputed does not excuse a failure to respond. Rule 36 permits a responding party to qualify an admission or denial based on disputed predicates; it does not permit substituting an "assumes facts" objection for any substantive response at all. StratAir must supplement Cepero INT No. 14, Cepero RFP Nos. 4 and 10, Grant RFA No. 121, and Laffita INT Nos. 10, 11, and 20 with proper responses.

### XIII. Compound and Argumentative Objections to RFAs

Rule 36 does not permit a party to refuse to answer, or to provide only a qualified answer, on the grounds that a request is "compound" or "argumentative." To the extent a request contains multiple factual propositions, the proper response is to admit one, deny another, and explain any qualification — not to use the compound nature of the request as a shield against any substantive response. Similarly, characterizing a request as "argumentative" is not a recognized basis for objection under Rule 36.

StratAir responded to RFA No. 3 — which asks StratAir to admit that decisions about which employees to select for the January 2024 layoff were made based on subjective evaluations by supervisors rather than objective, quantifiable performance metrics — with the objection that the request is "argumentative" and "presents a false and forced dichotomy between 'subjective evaluations' and 'objective, quantifiable performance metrics.'" StratAir then denies, subject to that objection. While StratAir may deny the request, it may not condition or qualify its denial by characterizing the request as argumentative. The denial stands on its own. StratAir must withdraw the argumentative objection and provide a clean, unqualified response to RFA No. 3.

StratAir responded to RFA No. 25 — which asks StratAir to admit that Gisela Barrera did not have personal, first-hand knowledge of the day-to-day performance of day shift employees and relied on day shift supervisors in selecting them for termination — by objecting that the request is "compound," because the first clause asks about Barrera's personal knowledge and the second asks about her reliance on supervisors' input. StratAir likewise objected to RFA No. 60 — which asks StratAir to admit that Barrera's decision to select Plaintiff Grant for termination was based in part on input or evaluations provided by supervisors Jose or Portales Viera — as "compound" because

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 12

it combines multiple discrete factual inquiries into a single request. StratAir raised the same compound objection to RFA No. 73, which asks whether an employee whom Plaintiff Laffita trained in late 2023 was retained following the January 2024 layoff, and to RFA No. 74, which asks whether supervisor Jose supervised Mr. Laffita and provided evaluations of his performance to decision-makers. A finding that a request is compound does not excuse StratAir from providing a complete response; it means StratAir must admit the portions it can and deny or explain the rest. StratAir must supplement its responses to RFA Nos. 3, 25, 60, 73, and 74 with proper admissions, denials, or Rule 36-compliant explanations that do not use the compound or argumentative characterization as a substitute for a substantive answer.

## XIV. <u>Improper Custodian Limitations on Communications Requests</u>

StratAir responds to numerous RFPs seeking communications referencing Plaintiffs, their ages, their race and national origin, and age-related language — including RFP Nos. 34, 37, 38, 40, 41, 42, 43, and 44 — by objecting that the requests are "overbroad" and then unilaterally limiting its promised production to only three named custodians: Jorge Corral, Gisela Barrera, and Armando Portales Viera, and in many instances to a shortened time window of its own choosing.

This approach is improper for two independent reasons. First, the fact that a request encompasses a broad subject area is not a basis for unilaterally substituting a narrower production without agreement or court order. If StratAir contends a request is overbroad, it must state that objection with specificity and explain why the burden is disproportionate — it may not simply self-select a subset of custodians and produce only their documents while withholding everything else. Second, the three-custodian limitation is substantively inadequate. StratAir's own interrogatory responses identify Jose Alverio ("Bori"), Lidier Leon, Wilson Dorado, and supervisor Javier as having participated in or provided input to the termination decisions. Communications from or to these individuals referencing Plaintiffs, their ages, their race and national origin, and age-related language during the relevant period are directly responsive to the requests and cannot be withheld simply because those supervisors were not among the three custodians StratAir chose to include.

For RFP No. 34, StratAir objects to producing "all communications" referencing any Plaintiff by name from November 2023 through February 2024 as overbroad, claiming not every such communication is relevant. Communications referencing each Plaintiff by name among their supervisors and HR personnel during the months immediately preceding and following their termination are squarely within the scope of Rule 26(b)(1) and require no further justification. For RFP No. 40, StratAir objects to producing all communications referencing Plaintiffs' ages as overbroad and "not limited to any relevant time frame." The request itself defines the time frame; StratAir's overbreadth objection to this centrally relevant category of communications should be withdrawn.

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 13

StratAir must conduct a full custodial search encompassing, at minimum, Jorge Corral, Gisela Barrera, Armando Portales Viera, Jose Alverio, Lidier Leon, Wilson Dorado, and supervisor Javier, and must produce all non-privileged responsive communications referencing Plaintiffs, their ages, their race and national origin, and age-related language for the period from October 2023 through February 2024, in response to Grant RFP Nos. 34, 37, 38, 40, 41, 42, 43, and 44.

## XV. "Decisional Unit" as Legal Term Objections

StratAir objects to Grant RFPs Nos. 30, 32, and 129 — which seek documents reflecting performance rankings and comparisons of employees considered in the January 2024 RIF selection process, categorizations of those employees as strong or weak performers, and documents defining or describing the scope of employees from which selections were made — on the ground that the term "decisional unit" is "a legal term of art" whose meaning "is determined by the Court." StratAir raised the same objection to Grant RFA No. 8, which asks StratAir to admit that independent contractors, temporary workers, and staffing agency workers who performed work at the Miami location in January 2024 were excluded from the decisional unit for the layoff.

This objection is unpersuasive. The underlying concept — which individuals StratAir actually considered together when making RIF selection decisions — is a straightforward factual inquiry. Plaintiffs are not asking StratAir to make a legal ruling or to endorse any particular legal framework; they are asking StratAir to identify the population of individuals StratAir itself considered when conducting the January 2024 workforce reduction. Whether courts ultimately apply the ADEA's "decisional unit" doctrine to the facts of this case is irrelevant to whether StratAir must disclose the facts of its own decision-making process. StratAir must withdraw this objection and respond fully to Grant RFPs Nos. 30, 32, and 129, and Grant RFA No. 8.

## XVI. Improper Privacy Objections

StratAir deploys privacy objections as a basis for withholding or limiting responsive information across several distinct categories of discovery in both the *Grant* and *Cepero Garcia* matters. In each instance, the proper response to legitimate privacy concerns is a mutually agreed or court-ordered protective order — not unilateral withholding. As the party claiming that privacy concerns justify non-production, StratAir bears the burden of demonstrating that protection is warranted; blanket invocations of privacy without particularized justification do not satisfy that burden.

### A. Comparator Employee Names and Personnel Records

The most pervasive use of privacy objections concerns the identity and personnel records of retained employees and other comparators. Across the RFPs and INTs in both consolidated matters, StratAir repeatedly declines to identify retained employees by name — offering only aggregate data in substitution — on the ground that the names and personal information of non-

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 14

party employees "are not relevant to any claim or defense in this action" and that disclosure would "implicate the privacy interests of non-party employees."

In the *Grant* matter, this objection is raised in the responses to Grant RFP Nos. 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 32, 87, and 112, and in the responses to Grant INT Nos. 9, 14, 15, 17, and 23; Laffita INT Nos. 6, 15, and 17; Pinto INT Nos. 6, 12, and 17; Rodriguez Ceruto INT No. 6; and Prado INT Nos. 6 and 16.

In the *Cepero Garcia* matter, StratAir raises the same objection in response to Interrogatory Nos. 7 and 24 and RFP Nos. 8, 9, 12, 23, 33, 34, 38, 39, and 40. In response to Cepero INT No. 7 — which asks for each RIF employee's name, position, hire date, termination date, and whether they had disclosed a disability or requested medical leave within six months before termination — StratAir objects that disclosure would "implicate the privacy rights of non-parties under applicable law, including the ADA's confidentiality provisions, which prohibit the disclosure of medical information obtained through employment-related inquiries," and withholds all employee identities. In response to Cepero INT No. 24 — which asks whether any retained employee had performance issues comparable to or worse than Plaintiff's — StratAir objects that the request "seeks confidential personnel information of non-party employees, the disclosure of which would implicate the privacy rights of those individuals," and provides no comparator identification whatsoever. In response to Cepero RFP No. 8, StratAir conditions even its limited offer of aggregate RIF data on execution of a unilateral confidentiality agreement and objects that "the names of employees at StratAir are not relevant to any claim or defense in this action." In response to Cepero RFP Nos. 9, 23, 33, 34, 38, 39, and 40 — which seek personnel files, performance evaluations, disciplinary records, and attendance records for similarly situated and comparator employees — StratAir invokes the "privacy interests of non-party employees" either to refuse production entirely or to limit any production to anonymous aggregate data. In response to Cepero RFP No. 12, which seeks identifying information for temporary workers and staffing agency personnel performing similar work, StratAir objects that production would require disclosure of "sensitive, confidential personnel documents" of non-party employees.

These privacy objections are legally insufficient to justify non-production in either matter. Comparator employee identity and records are directly relevant and routinely disclosed in employment discrimination cases. The fact that the individuals whose records are sought are non-parties does not render their information undiscoverable; it simply means that appropriate safeguards may be warranted. A properly scoped protective order governing the use and dissemination of employee information is the appropriate mechanism. StratAir has in many of these responses offered to produce "aggregate data" conditioned on execution of a confidentiality agreement of its own drafting. Aggregate, anonymized data is not a substitute for the individual-level comparator information Plaintiffs are entitled to discover, and as addressed in Section XXIII, StratAir may not condition production on Plaintiffs agreeing to confidentiality terms not approved

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 15

by the Court. StratAir must withdraw the privacy objections to each of the above requests and produce responsive comparator employee information subject to any reasonable protective order.

## B. Third-Party Medical and Leave Information

Both consolidated matters are also affected by StratAir's use of privacy objections to block discovery into how it handled FMLA leave requests, medical leave disclosures, and disability accommodation requests by employees other than Plaintiffs.

In the *Grant* matter, RFP No. 81 — requesting documents reflecting other StratAir employees at the Miami warehouse location who were granted FMLA leave in 2023–2024, including the reasons for leave and whether the leave was designated as FMLA — was refused entirely on the ground that production would "implicate the privacy interests and confidential medical information of non-party employees." Similarly, Rodriguez Ceruto INT No. 10 — asking StratAir to identify employees at the Miami location who requested time off for personal or family medical reasons and were not required to provide a doctor's note — was objected to in part on the ground that it "calls for the disclosure of confidential medical information and reasons for time-off requests of non-party employees." Rodriguez Ceruto INT No. 16 — asking StratAir to identify employees who were granted FMLA leave, had leave designated as FMLA leave, or requested time off for family medical reasons from January 2023 through January 2024 — was refused in part because it "calls for the disclosure of confidential medical information of non-party employees," including the "nature of the medical situation" underlying each employee's FMLA leave or time-off request.

In the *Cepero Garcia* matter, StratAir deploys the same category of objection across an even broader range of requests. In response to Interrogatory No. 12 — asking StratAir to identify all employees who requested FMLA leave, disclosed a serious health condition, or requested disability accommodations between January 2023 and the present — StratAir objects that production would "implicate the privacy rights of those individuals under applicable law, including the ADA's confidentiality provisions." In response to Cepero RFP Nos. 18 and 19, which seek FMLA leave request documentation and disability accommodation records for any StratAir employee from January 2023 to the present, StratAir objects that production would "implicate the privacy interests of those individuals and applicable legal requirements for maintaining the confidentiality of such documents." In response to Cepero RFP Nos. 30 and 31, which seek records identifying employees who requested FMLA leave or disclosed serious health conditions and were not terminated in the RIF — along with records of how those requests were processed — StratAir objects that production would "violate the privacy interests of non-party employees and StratAir's obligations under applicable federal and state laws, including the ADA's confidentiality requirements for employee medical information," and characterizes these requests as a "fishing expedition designed to rummage through the confidential medical records of StratAir's workforce." In response to Cepero RFP No. 35, which seeks documents showing non-selected employees' disability or medical status and leave histories, StratAir objects that the request "seeks confidential medical information

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 16

regarding the disability or medical condition of non-party employees and their leave histories." In response to Cepero RFP No. 36, which seeks protected characteristic data (including disability status) comparing employees selected for the RIF to those retained, StratAir objects that the request seeks "protected medical and disability information of non-party employees." In response to Cepero RFP No. 26, which seeks records of prior instances in which StratAir terminated an employee who had requested medical leave, disclosed a serious health condition, or sought disability accommodations, StratAir objects that production would implicate "confidential medical information and personnel records of non-party employees."

Whether other employees were granted FMLA leave at the same worksite during the same period — and whether those employees were treated differently than Plaintiffs with respect to leave requests, notice obligations, and documentation requirements — is directly relevant to Plaintiffs' FMLA interference, failure-to-notify, and disparate treatment claims. To the extent FMLA and related privacy regulations impose confidentiality obligations on employer-held medical information, those obligations are the subject of established protective order procedures that courts in employment discrimination cases regularly employ. They do not justify categorical non-production. StratAir must produce responsive documents regarding FMLA designations, FMLA leave grants, and leave-related documentation practices for other employees at the Miami location during the relevant period, subject to a narrowly tailored protective order governing the use and dissemination of third-party medical information.

## C. Non-Party EEOC Charges

In the *Grant* matter, RFP No. 118 — seeking all EEOC charges filed against Defendant from January 1, 2022, through the present — was partially refused on the ground that producing EEOC charges filed by non-party employees would "implicate the privacy interests of non-party employees." StratAir agreed to produce only the charges filed by Plaintiffs themselves.

In the *Cepero Garcia* matter, StratAir raises a parallel objection in response to RFP No. 25 — which seeks all EEOC charges, discrimination complaints, administrative claims, or lawsuits filed against StratAir in the past five years alleging disability discrimination, FMLA interference or retaliation, or any other form of employment discrimination, including all position statements, responses, settlement agreements, and final determinations. StratAir objects in part that this request seeks documents that are "confidential or protected by the attorney-client privilege and/or the work product doctrine, including position statements, responses, and settlement agreements." To the extent this objection is grounded in the confidentiality of third-party charging parties' information, it fails for the same reason as the *Grant* matter objection: prior EEOC charges by other employees are plainly discoverable in employment discrimination litigation, and any confidentiality concerns are addressed through a protective order. To the extent StratAir separately invokes privilege as to its own internal legal communications reflected in position statements or response documents,

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 17

those materials must be identified on a privilege log as required by Rule 26(b)(5)(A); a blanket confidentiality designation is not a substitute for that obligation.

Prior EEOC charges and complaints alleging the similar statutory violations in both matters are plainly relevant to notice, intent, willfulness, and whether StratAir had a practice of engaging in or failing to remedy the conduct at issue. The identity of the charging parties and the substance of their allegations are discoverable in employment discrimination litigation regardless of whether those parties voluntarily filed charges with a federal agency. StratAir must produce all EEOC charges filed against it within the requested time period in both matters, subject to any appropriate protective order.

## D. Non-Party Witness Contact Information and Expert Personal Information

In response to Prado INT2 No. 1, StratAir objects to disclosing the contact information of persons with relevant factual knowledge on the ground that doing so would "implicate the privacy interests" of non-party individuals, arguing that such information "should not be compelled absent an appropriate protective order and a showing that the information is directly relevant and not obtainable through less intrusive means." In response to Prado INT2 No. 2, StratAir similarly objects to producing the contact information of expert witnesses on privacy grounds, contending that such information "should not be compelled absent a showing that it is not obtainable through the ordinary expert disclosure process."

These privacy objections do not justify withholding the identities or contact information of persons with relevant factual knowledge or of retained testifying experts. The identity and contact information of fact witnesses — including current and former employees with knowledge of the events at issue — is information routinely disclosed in litigation through initial disclosures and interrogatory responses. It is not transformed into protected information by labeling it a privacy concern. As to expert witnesses, Rule 26(a)(2) expressly contemplates disclosure of expert identity and contact information through the expert disclosure process; StratAir's refusal to provide even the names of retained testifying experts cannot be sustained on privacy grounds. StratAir must provide the identity and available contact information for all persons with relevant factual knowledge identified in response to Prado INT2 No. 1, and must identify all retained testifying experts in response to Prado INT2 No. 2, in each case subject to any agreed or court-ordered protective order as appropriate.

## E. Confidential Customer and Business Information

In addition to the employee privacy objections described above, StratAir invokes confidentiality on behalf of third-party business entities and on the ground that certain financial information is "competitively sensitive" across both consolidated matters.

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 18

StratAir objects to Grant RFP Nos. 1 and 2 — which seek documents relating to StratAir's decision to conduct the January 2024 RIF and all documents supporting StratAir's contention that a business need required the workforce reduction — on the ground that such documents include "confidential or proprietary information belonging to StratAir's customer." StratAir raises the same third-party client confidentiality objection to Grant RFP No. 3, which seeks StratAir's financial statements, profit and loss statements, revenue reports, income statements, balance sheets, budgets, forecasts, and operational reports from January 2023 through March 2024, adding further that such documents contain "confidential, proprietary, and competitively sensitive financial information." RFP No. 4, which seeks communications between StratAir and Amazon.com or any other client concerning staffing levels, workload, cargo volume, flight schedules, contract modifications, or service requirements at the Miami warehouse location from October 2023 through March 2024, was refused almost entirely on the ground that it seeks "confidential, proprietary, and competitively sensitive business information, including information that may be subject to contractual confidentiality obligations with third-party clients," and further on the ground that it includes "confidential or proprietary information belonging to StratAir's customer." RFP No. 35, which seeks communications among decision-makers concerning the business justification for, timing of, and financial or operational reasons for the January 2024 layoff, was similarly refused in part on the ground that it seeks "documents that are confidential or proprietary." RFP Nos. 116 and 117, which seek documents sufficient to show StratAir's net worth, revenues, profits, and financial condition, were refused in part on the ground that they seek "confidential, proprietary, and competitively sensitive financial information, including tax returns." Finally, RFP No. 145, which seeks cost comparisons and financial analyses regarding the use of independent contractors or temporary workers versus retaining direct employees, was refused in part on the ground that it seeks "confidential, proprietary, and competitively sensitive financial information."

None of these objections justifies withholding. StratAir's entire nondiscriminatory justification for the January 2024 RIF rests on the assertion that a major customer announced a reduction in future cargo delivery flights, causing an immediate and significant decline in anticipated revenue. Having placed that customer's decision and its financial impact at the center of its defense, StratAir cannot simultaneously invoke the confidentiality of documents evidencing that same decision to shield them from discovery. Plaintiffs are entitled to examine whether the customer's decision actually caused the revenue impact StratAir describes, whether the scope and timing of the RIF are consistent with that impact, and whether StratAir's financial condition supports or undermines the stated business justification. With respect to the communications with Amazon.com and other clients (Grant RFP No. 4), any genuine contractual confidentiality obligations between StratAir and its client do not render those communications undiscoverable — they are an appropriate candidate for a confidentiality designation under a negotiated protective order. The same is true of competitively sensitive financial information sought in Grant RFPs 3, 116, 117, and 145: such information is routinely produced in employment litigation under the protections afforded by a standard protective order. StratAir must withdraw these confidentiality and proprietary

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 19

information objections from its responses to Grant RFP Nos. 1, 2, 3, 4, 35, 116, 117, and 145, and produce all responsive materials subject to a mutually agreed or court-ordered protective order.

In response to Cepero RFP No. 7 — which requests all financial documents supporting the business justification for the January 2024 RIF, including profit and loss statements, budget reports, revenue projections, and cost analyses — StratAir objects in part that the request "seeks documents that are confidential or proprietary information belonging to StratAir's customer," apparently referring to the major customer whose decision to reduce cargo delivery flights StratAir contends triggered the RIF. In response to Cepero Interrogatory No. 18 — which asks StratAir to identify any staffing agencies it used between September 2023 and March 2024 and to describe the job functions those workers performed — StratAir objects in part that the request "seeks confidential and proprietary business information regarding StratAir's contractual relationships with third-party staffing agencies."

As with the *Grant* matter, neither invocation justifies withholding. With respect to Cepero RFP No. 7, the purported confidentiality of documents prepared by or for StratAir's customer does not render those documents undiscoverable; it makes them appropriate candidates for a confidentiality designation under a negotiated protective order. The identity of the unnamed major customer and the financial impact of that customer's decision on StratAir's revenue are squarely at issue — StratAir's entire nondiscriminatory justification for the RIF depends on the existence and magnitude of that customer's announced reduction in future cargo flights and resulting decrease in revenue. Plaintiffs are entitled to examine the business and financial record underlying that justification. With respect to Cepero INT No. 18, this argument is further undermined by StratAir's own response, which voluntarily names SNI Companies as the staffing agency it used and describes the nature of the workers' duties. Having identified the agency, StratAir cannot simultaneously invoke business confidentiality to withhold the scope and timing of that engagement. The terms of StratAir's staffing arrangements — what workers were provided, for how long, and to perform what functions — are facts directly relevant to Plaintiffs' pretext theory, and any legitimate confidentiality concerns are addressed through a protective order. StratAir must withdraw both objections and respond fully to Cepero RFP No. 7 and Cepero INT No. 18.

### XVII. <u>Improper Estoppel Reservation and Overbreadth</u>

In response to RFP No. 119 — which seeks all position statements, responses, rebuttals, or submissions made by Defendant to the EEOC regarding any of the Plaintiffs' charges — StratAir agrees to produce its EEOC position statements but inserts a lengthy reservation purporting to disclaim that those statements constitute "judicial admissions or binding concessions" and reserving the right to "assert all available defenses and to present evidence and arguments that may differ from, supplement, or clarify any statements previously made during the EEOC proceedings."

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 20

This reservation is not a proper objection to a discovery request; it is an unsolicited legal argument that has no place in a Rule 34 response. Plaintiffs do not request an advisory opinion on the evidentiary use of StratAir's EEOC submissions, and StratAir may not insert self-serving legal disclaimers into discovery responses as a preemptive litigation maneuver. The proper vehicle for arguments about the admissibility or binding effect of prior statements is a motion in limine. StratAir must withdraw this reservation from its response to RFP No. 119 and produce the responsive documents without qualification.

RFPs Nos. 120 and 121 — seeking, respectively, all documents produced by Defendant to the EEOC in connection with its investigation of Plaintiffs' charges, and all correspondence between Defendant and the EEOC regarding Plaintiffs' charges from 2024 through the present — received overbreadth objections and no promise of production. These materials are directly relevant to Plaintiffs' claims, to the factual representations StratAir has made about the January 2024 RIF in an adjudicative forum, and to the consistency between StratAir's administrative and litigation positions. The requests are appropriately bounded by subject matter (Plaintiffs' charges), custodian (StratAir), and time period. StratAir must produce all documents submitted to the EEOC and all correspondence with the EEOC in connection with each Plaintiff's charge of discrimination.

## XVIII. Improper Scope Limitations on Promised Document Production

In multiple instances across the Cepero Garcia RFP responses, StratAir promises to produce documents but then narrows the scope of that production in ways that are inconsistent with the requests as written and unsupported by the Federal Rules.

RFP No. 2 requests all documents relating to the decision to terminate Plaintiff's employment, including communications among decision-makers or individuals who influenced the decision. StratAir limits production to communications among only three named individuals — Jorge Corral, Armando Portales Viera, and Gisela Barrera — on the ground that the broader request is "vague and ambiguous" for lacking a time limitation, specific custodian, or specific subject matter. This limitation is improper. The subject matter is specific and unambiguous: the decision to terminate Plaintiff Cepero Garcia's employment. The absence of an explicit custodian list does not render the request unanswerable; StratAir itself identified the relevant participants in responding to Interrogatory Nos. 2 and 3. StratAir must conduct a reasonable custodial search encompassing all individuals who participated in or influenced the termination decision and produce all non-privileged responsive communications — not merely those among three self-selected custodians.

RFP No. 5 requests all FMLA notices provided to Plaintiff at any time during his employment, including eligibility notices, rights and responsibilities notices, designation notices, and any other FMLA-related communications. StratAir limits its search to January 2024 documents only, on the ground that "Plaintiff's Complaint references only allegations regarding requests for time off from 2024." This temporal limitation is improper. The FMLA imposes general notice obligations at the

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 21

commencement of employment and at other points throughout the employment relationship, independent of a specific leave request. Whether StratAir provided general FMLA notices to Plaintiff at the time of his hire in or around August 2022 — or at any other point during his employment — is directly relevant to Plaintiff's claim that StratAir failed to inform him of his rights under the statute. StratAir must search for and produce all FMLA notices provided to Plaintiff across the full duration of his employment, from hire through termination in January 2024.

RFP No. 6 requests all documents relating to Plaintiff's cancer diagnosis, including communications among StratAir employees or managers discussing Plaintiff's medical condition, health status, or need for treatment. StratAir limits its production to Plaintif''s own WhatsApp communications to management regarding his "blister or sore (in Spanish)," and objects to all other responsive materials as overbroad and lacking limitation as to custodian, time period, or subject matter. This limitation is improper. Internal communications among StratAir's managers and HR personnel about a specific identified employee's medical condition are core evidence in this case — they bear directly on who knew what about Plaintiff's condition, when they knew it, and whether that knowledge influenced the termination decision. There is nothing overbroad about seeking internal communications discussing one named employee's identified medical situation. StratAir must produce all non-privileged responsive communications concerning Plaintiff's medical condition, not only those that Plaintiff himself initiated.

RFP No. 21 requests all communications among StratAir management, HR personnel, or supervisors mentioning Plaintiff by name or discussing Plaintiff between September 2023 and February 2024 — a defined five-month window encompassing the period from before Plaintiff's cancer disclosure through shortly after his termination. StratAir objects that this request is overbroad because it seeks communications "without limitation as to specific subject matter." This objection lacks merit. The request is already limited to a specific category of custodians (management, HR, and supervisors), a specific named individual (Plaintiff Cepero Garcia), and a specific temporal window. Internal communications mentioning or discussing Plaintiff among management and HR personnel during the months surrounding his cancer disclosure, leave request, and termination are among the most significant documents in this case. StratAir must withdraw this objection and produce all non-privileged responsive communications.

RFP No. 27 requests all organizational charts, reporting structures, and staffing lists for StratAir's Miami location from January 2023 through the present. StratAir limits production to organizational charts and reporting structures from January 2024 only and further conditions that limitation to charts that "list Plaintiff or Plaintiff's position." Both limitations are unjustified. Organizational charts from before and after January 2024 are relevant to understanding StratAir's pre-RIF workforce structure, departmental reporting relationships, and the scope of post-RIF changes. Conditioning production on whether a chart specifically names Plaintiff or his position eliminates documents showing the broader departmental structure — information directly relevant to identifying comparator employees and the positions considered in the selection process. StratAir

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 22

must produce all responsive organizational charts and staffing lists for the Miami location for the full period requested.

### XIX. Vagueness and Characterization Objections to Clearly Answerable Requests

StratAir raises vagueness and characterization objections to two RFAs in the *Cepero Garcia* matter that are clearly answerable as presented.

RFA No. 1 asks StratAir to admit that it did not utilize a "written, objective scoring system or rubric" to evaluate employees for selection in the January 2024 RIF. StratAir objects that the terms "written, objective scoring system or rubric" are "vague and ambiguous," and then denies. The terms are not vague. StratAir itself described its selection process in responding to Interrogatory No. 6 as one in which performance, seniority, and operational needs were "weighed holistically," with no single criterion determinative, and admitted in response to RFA No. 24 that it had no written policy or procedure governing employee selection for the RIF at all. In that context, there is nothing unclear about asking whether StratAir used a formal, written, structured scoring mechanism. The vagueness objection appears designed to deny a request whose straightforward answer would be an admission fully consistent with StratAir's own disclosures elsewhere in these responses. StratAir must withdraw the vagueness objection to RFA No. 1 and provide an unqualified admission or denial, supplemented if necessary by a factual explanation as permitted by Rule 36.

RFA No. 15 asks StratAir to admit that it terminated Plaintiff's employment "before responding to his final request for medical leave in January 2024." StratAir "objects to the characterization 'before responding to his final request for medical leave in January 2024'" and then, subject to that objection, denies. A characterization objection of this type is not a recognized basis for refusing to answer under Rule 36. Rule 36 requires an admission, denial, or detailed explanation of why the responding party cannot truthfully do either. To the extent StratAir disputes that Plaintiff's communications constituted a cognizable "request for medical leave," it must say so in a qualified response rather than substituting an objection to the request's phrasing for any substantive response. The temporal sequence between Plaintiff's leave-related communications and his termination is a significant contested fact in this case, and StratAir may not use a labeling dispute to avoid addressing it. StratAir must supplement its response to RFA No. 15 with a proper admission, denial, or Rule 36-compliant explanation that addresses the actual chronology of events.

### XX. "Legal Conclusion" and Inapplicable Legal Framework Objections to Factual Discovery

StratAir raises "legal conclusion" or inapplicable legal framework objections in response to three RFPs in the *Cepero Garcia* matter that seek straightforward factual or documentary information.

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 23

RFP No. 38 requests all documents identifying "similarly situated employees" — expressly defined in the request itself as employees "with comparable job duties, qualifications, performance levels, and reporting structures as Plaintiff" — including their employment status as of January 2024 and whether they were selected for the RIF. StratAir objects that "similarly situated employees" is a legal term of art whose meaning is determined by the Court, and that the request improperly asks StratAir to adopt Plaintiff's proposed comparator framework before any such determination has been made. This objection misses the point. Plaintiff has defined the term within the request by reference to objective, verifiable factual criteria: comparable job duties, qualifications, performance levels, and reporting structures. Whether employees meeting those characteristics are ultimately "similarly situated" as a legal matter is a question for another day. What matters now is that documents about employees whose work, qualifications, performance, and reporting structure were comparable to Plaintiff's are plainly discoverable regardless of how courts may ultimately define the comparator universe. StratAir is not being asked to endorse a legal conclusion — it is being asked to produce documents. StratAir must withdraw this objection and produce all responsive materials.

RFP No. 50 requests all documents identifying which positions, departments, job titles, or classifications StratAir considered part of the "decisional unit" when conducting the January 2024 RIF. StratAir objects that "decisional unit" is "a legal term of art under the Older Workers Benefit Protection Act and the Age Discrimination in Employment Act" with "no application to Plaintiff's claims," which allege disability discrimination and FMLA interference. This objection is unpersuasive. The underlying concept — which employees StratAir considered together in making RIF selection decisions — is relevant in any RIF discrimination case regardless of the specific statute at issue. Which employees were pooled together during the reduction-in-force process bears directly on the relevant comparator population, the credibility of StratAir's nondiscriminatory justification, and whether Plaintiff's protected status influenced his selection from within the applicable pool. The fact that Plaintiff does not assert an ADEA claim does not render documents identifying the scope of StratAir's January 2024 decision-making pool irrelevant or undiscoverable under Rule 26(b)(1). StratAir must withdraw this objection and produce documents sufficient to identify which employees were considered in connection with the January 2024 termination decisions.

RFP No. 51 requests all spreadsheets, lists, databases, or other documents showing the pool of employees or workers from which StratAir made selection decisions for the January 2024 RIF. StratAir objects that the request "assumes that StratAir maintained formal spreadsheets, lists, or databases documenting a defined 'pool'" and that the term "pool of employees or workers" is vague and ambiguous. Neither objection is meritorious. The request does not assume that formal documentation exists — it asks for whatever documents, in whatever format, reflect the population of employees considered during the reduction-in-force process. If StratAir did not maintain any documentation of its selection pool, it must say so expressly; it may not raise a vagueness objection as a pretext for avoiding that disclosure. The phrase "pool of employees or workers" is not vague:

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 24

in context, it plainly refers to the personnel considered for inclusion in the January 2024 workforce reduction. StratAir must provide a complete response to RFP No. 51, and must do so without conditioning even a limited production on Plaintiff's execution of a confidentiality agreement, for the reasons stated in Section XXIII below.

## XXI. Contradictory Positions on Scoring and Comparative Documentation

StratAir's responses contain a significant internal contradiction regarding comparative employee documentation that must be reconciled before these responses can be taken at face value.

In responding to RFA No. 1 — which asks StratAir to admit that it did not utilize a written, objective scoring system or rubric to evaluate employees for selection in the January 2024 RIF — StratAir objects and denies. By denying, StratAir affirmatively asserts that it did utilize some form of written, objective scoring system or rubric. Yet in responding to RFP No. 32 — which requests all documents comparing Plaintiff to other employees, including any scoring matrices, ranking systems, performance comparisons, or analyses used in selecting employees for the RIF — StratAir states affirmatively that "StratAir did not utilize scoring matrices, ranking systems, written performance comparisons, or similar comparative analyses in connection with the January 2024 RIF, and thus no such documents exist."

These positions cannot be reconciled. If StratAir used a written, objective scoring system (as its denial of RFA No. 1 asserts), responsive documents should exist and must be produced in response to RFP No. 32. If no scoring matrices, ranking systems, or written comparative analyses exist (as StratAir claims in its RFP No. 32 response), then StratAir's denial of RFA No. 1 is incorrect. This internal contradiction is further compounded by StratAir's admission in response to RFA No. 24 that it had no written policy or procedure governing employee selection for the RIF, and its description in Interrogatory No. 6 of the selection process as "holistic" with no single criterion determinative — descriptions that are difficult to square with the existence of a "written, objective scoring system." StratAir must resolve these contradictions in its amended responses: it must either identify and produce the written scoring system or rubric whose existence it asserted by denying RFA No. 1, or it must withdraw that denial and provide an amended admission consistent with its responses elsewhere in these discovery materials.

## XXII. Relevance Objections to RFAs

Rule 36 requires a responding party to admit, deny, or explain why it cannot truthfully admit or deny a request. Relevance alone is not a proper basis for refusing to answer an RFA. Nevertheless, StratAir responded to numerous RFAs with nothing more than a relevance objection and no substantive response.

These objections should be withdrawn from, at minimum:

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 25

- *Grant* **matter RFAs**: Nos. 7, 10, 11, 13, 34, 63, 71, 76, 87, 98, 103, 111, and 112.

- *Cepero Garcia* **matter RFAs**: Nos. 26, 28, 29, 31, 34, 35, 36, 39, 40, and 41.

These RFAs concern matters plainly relevant to Plaintiffs' claims, including training, RIF procedures, comparator employees, staffing agency workers, post-RIF staffing, prior complaints, and employees with disciplinary histories. StratAir must supplement all such RFAs with proper admissions, denials, or detailed explanations as required by Rule 36.

## XXIII. <u>Privilege Assertions Without a Privilege Log</u>

StratAir repeatedly invokes attorney-client privilege and/or work product protection — in response to Grant RFP Nos. 39, 60, 96, 106, 107, 108, 109, 110, 119, 122, 124, and 126; Grant RFA No. 6; Prado INT2 Nos. 1 and 2; Cepero INT No. 20; and Cepero RFP No. 28 — but has produced no privilege log. Rule 26(b)(5)(A) requires that when a party withholds documents based on privilege, it must describe the nature of the withheld materials in a manner that enables other parties to assess the privilege claim. Blanket privilege assertions are insufficient. For each withheld document or communication, StratAir must provide a privilege log identifying the nature of the withheld material in a manner sufficient to permit assessment of the privilege claim.

## XXIV. <u>Confidentiality Objections and Unilateral Conditions on Production</u>

Throughout its responses, StratAir conditions production of certain materials on Plaintiffs first executing a confidentiality agreement drafted by StratAir. This unilateral condition should be withdrawn. StratAir may not condition compliance with Rule 34 on Plaintiffs' agreement to confidentiality terms not approved by the Court. If StratAir seeks protection for sensitive information, the proper procedure is to negotiate a mutually agreeable protective order or seek relief under Rule 26(c). Absent a Court order, StratAir must produce all responsive materials without imposing unilateral preconditions. This condition should be withdrawn from, at minimum:

- *Grant* **matter**: RFP Nos. 9, 21, 22, 23, 25, 26, 27, 28, 29, 30, 32, 33, 36, 38, 39, 87, 111, 112, 113, 123, 129, and 132 through 148; and related INT and RFA responses identified above.

- *Cepero Garcia* **matter**: RFP Nos. 8, 9, 18, 19, 23, 26, 30, 31, 33, 34, 35, 36, 38 through 40, and 51; and related INT and RFA responses identified above.

## XXV. <u>Refusal to Identify Witnesses With Relevant Knowledge</u>

In response to interrogatories seeking identification of persons with knowledge relevant to the January 2024 RIF, Plaintiffs' performance, staffing decisions, complaints of discrimination, and

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 26

related issues, StratAir largely refused to provide substantive information, relying on objections of vagueness, duplication of Rule 26 disclosures, work product protection, burden, and privacy. These objections are improper.

The phrase "persons with knowledge of facts relevant to any claim or defense" tracks the language of Rule 26(a)(1)(A)(i) verbatim — StratAir cannot credibly claim it is too vague to answer. Rule 26(a)(1)(A)(i) requires disclosure only of witnesses a party "may use to support its claims or defenses"; Prado INT2 No. 1 seeks all persons with relevant knowledge, including those whose knowledge may be adverse to StratAir's position, which is precisely the gap that initial disclosures leave unfilled. While StratAir asserts work product protection over the summary of witness knowledge, whether StratAir has interviewed those witnesses, and trial witness designations, work product protection shields counsel's mental impressions — not the underlying facts known to witnesses. Formal trial witness designations are governed by the scheduling order, but Plaintiffs are entitled during fact discovery to identify witnesses with relevant factual knowledge and the general subject matter of that knowledge.

StratAir must provide a substantive response to Prado INT2 No. 1 identifying knowledgeable witnesses, summarizing the subjects of their knowledge, and providing available contact information, subject to any agreed or Court-ordered protective order.

## XXVI. <u>Refusal to Identify Retained Testifying Experts</u>

StratAir refused entirely to respond to Prado INT2 No. 2, which asks StratAir to identify all expert witnesses it has retained, consulted, or expects to call at trial, relying on objections of prematurity, duplication of Rule 26(a)(2), work product protection for consulting experts, and proportionality.

Plaintiffs acknowledge that full Rule 26(a)(2) expert reports are governed by te Court's scheduling order and do not ask StratAir to front-run that schedule. However, StratAir''s invocation of Rule 26(b)(4)(D) work product protection as a blanket shield for all experts — including testifying ones — is overbroad. Rule 26(b)(4)(D) protects non-testifying consulting experts; it provides no protection whatsoever for retained testifying experts. To the extent StratAir has retained any testifying experts, it must identify them by name and area of expertise, with full Rule 26(a)(2) disclosures to follow the Court's scheduling order.

## XXVII. <u>Requested Relief</u>

To avoid motion practice and a discovery hearing before Magistrate Judge Lett, Plaintiffs request that, by May 13, 2026, StratAir:

1.  Immediately produce all documents it has pledged to produce in its RFP responses in both consolidated matters, including in the *Grant* matter all materials referenced in the responses to RFP Nos. 1, 6, 10, 14, 19, 31, 36, 38, 41, 45, 47, 48, 49, 55, 59, 62, 63, 65, 70, 72, 75,

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 27

77, 78, 79, 80, 82, 84, 88, 89, 90, 91, 94, 95, 97, 98, 99, 100, 101, 103, 105, 106, 107, 110, 115, 119, and 125, and in the *Cepero Garcia* matter all materials promised in RFP Nos. 1, 2, 3, 4, 5, 6, 7, 15, 16, 17, 22, 23, 28, 50, and 51;

2. Serve complete, verified answers without objection to all nineteen of Plaintiff Same Gonzalo's First Set of Interrogatories, all objections having been waived under Rule 33(b)(4);

3. Withdraw the boilerplate general objections incorporated by reference into its RFP responses in both consolidated matters;

4. Provide complete, substantive responses – without premature or contention-based objections – to: Grant INT Nos. 17 and 19; Laffita INT Nos. 18, 19, and 21; Pinto INT Nos. 8, 9, 15, and 20; Prado INT Nos. 7, 8, and 14; Rodriguez Ceruto INT Nos. 17 and 18; Prado INT2 Nos. 1 and 2; Cepero INT Nos. 13 and 20; Grant RFP Nos. 78, 106, 107, 108, 109, and 110; and Cepero RFP No. 28;

5. Withdraw all improper relevance objections concerning comparator employees, staffing agency workers, temporary workers, independent contractors, and post-RIF workforce information, and provide full responses to all affected requests identified in Sections V and VI above – including, at minimum, Grant INT Nos. 10, 15, 17, 19 (Laffita), 7, 18 (Pinto), 17 (Prado), and 10 (Rodriguez Ceruto); Grant RFP Nos. 9, 10, 11, 12, 13, 21, 22, 23, 25, 26, 27, 28, 29, 30, 32, 33, 36, 38, 39, 87, 109, 111, 112, 113, 123, 129, and 132 through 148; Grant RFAs Nos. 8, 10, 11, 13, 63, 71, 76, 87, 98, 103, and 112; Cepero INT Nos. 7, 8, 12, 17, 18, and 24; Cepero RFP Nos. 8, 9, 11, 12, 13, 18, 19, 23, 24, 26, 30, 31, 32, 33, 34, 35, 36, and 37 through 49; and Cepero RFAs Nos. 26, 28, 29, 31, 34, 35, and 36; and identify all comparator employees by name, with responsive demographic and employment information, subject to any reasonable protective order negotiated between the parties or ordered by the Court;

6. Provide complete supplemental responses to Cepero INT No. 8, Grant INT No. 8, Laffita INT No. 5, Pinto INT No. 5, Prado INT No. 5, and Rodriguez Ceruto INT No. 5, addressing all four prongs of each interrogatory: (a) whether StratAir contends each Plaintiff's position was eliminated and not refilled; (b) whether each Plaintiff's job duties were reassigned and to whom; (c) the identity, age, and start date of any person hired or engaged to perform the same or substantially similar work after January 2024; and (d) whether the total headcount of persons performing warehouse, cargo, or security work at the Miami location decreased, remained the same, or increased following the January 2024 layoff;

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 28

7. Produce responsive training, compliance, and RIF procedure materials in response to Grant RFP Nos. 50, 51, 52, 83, and 85; Pinto INT No. 20; Grant RFA No. 7; Cepero INT No. 16; Cepero RFP No. 20; and Cepero RFAs Nos. 7 and 16;

8. Withdraw all confidential customer, proprietary, and competitively sensitive financial information objections, and produce responsive financial statements, business analyses, revenue projections, staffing analyses, client communications, cost comparisons regarding use of non-employee workers, and documents sufficient to establish StratAir's net worth, revenues, profits, and financial condition for tax years 2023, 2024, and 2025, in response to Grant RFP Nos. 1, 2, 3, 4, 35, 116, 117, and 145, and Cepero RFP Nos. 7 and 14; and provide a complete, substantive response to Cepero INT No. 18 identifying the staffing agencies used between September 2023 and March 2024 and the scope, timing, and job functions of their workers' engagement, all subject to any mutually agreed or court-ordered protective order;

9. Supplement responses regarding ADA/FMLA coverage, eligibility, and interactive process issues in response to Cepero RFAs Nos. 5, 6, 7, and 16, and Cepero INT No. 13;

10. Withdraw privacy and relevance objections to prior EEOC charges, discrimination complaints, and related litigation, and produce all responsive materials in response to Grant INT No. 21; Laffita INT Nos. 8 and 9; Grant RFP Nos. 53, 54, 61, and 118; Cepero INT No. 19; Cepero RFAs Nos. 39, 40, and 41; and Cepero RFPs Nos. 25 and 26, subject to any appropriate protective order;

11. Withdraw the improper "assumes facts" objections identified in Section XII and provide complete, substantive responses to Cepero INT No. 14; Cepero RFP Nos. 4 and 10; Grant RFA No. 121; and Laffita INT Nos. 10, 11, and 20;

12. Supplement Grant RFAs Nos. 3, 25, 60, 73, and 74 with proper, unqualified admissions, denials, or Rule 36-compliant explanations, without reliance on compound or argumentative objections as described in Section XIII above;

13. Conduct a full custodial search encompassing, at minimum, Jorge Corral, Gisela Barrera, Armando Portales Viera, Jose Alverio, Lidier Leon, Wilson Dorado, and supervisor Javier, and produce all non-privileged responsive communications in response to Grant RFP Nos. 34, 37, 38, 40, 41, 42, 43, and 44;

14. Withdraw the "decisional unit as legal term of art" objections to Grant RFP Nos. 30, 32, and 129 and Grant RFA No. 8, and respond fully to each as described in Section XV above;

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 29

15. Produce all responsive documents regarding FMLA leave grants, FMLA designations, and leave-related documentation practices for other employees at the Miami location in 2023-2024 in response to Grant RFP No. 81 and Rodriguez Ceruto INT Nos. 10 and 16, subject to a narrowly tailored protective order governing third-party medical information;

16. Withdraw the estoppel reservation from the response to Grant RFP No. 119 and produce the responsive EEOC position statements without qualification; and produce all documents submitted to the EEOC and all correspondence with the EEOC in connection with each Plaintiff's charge of discrimination in response to Grant RFP Nos. 120 and 121;

17. Withdraw the improper scope limitations identified in Section XVIII and provide full, unqualified responses to Cepero RFP Nos. 2, 5, 6, 21, and 27, consistent with those requests as written;

18. Withdraw the vagueness objection to Cepero RFA No. 1 and the characterization objection to Cepero RFA No. 15, and provide proper admissions, denials, or Rule 36-compliant explanations as described in Section XIX above;

19. Withdraw the "legal conclusion" and inapplicable legal framework objections to Cepero RFP Nos. 38, 50, and 51, and produce all responsive documents as described in Section XX above;

20. Resolve the internal contradiction identified in Section XXI by either identifying and producing the written scoring system or rubric whose existence StratAir asserted by denying Cepero RFA No. 1 and responding fully to Cepero RFP No. 32, or withdrawing that denial and providing an amended admission consistent with StratAir's responses elsewhere in these discovery materials;

21. Supplement all RFAs that currently contain only relevance objections - including Grant RFAs Nos. 7, 10, 11, 13, 34, 63, 71, 76, 87, 98, 103, 111, and 112, and Cepero RFAs Nos. 26, 28, 29, 31, 34, 35, 36, 39, 40, and 41 - with proper admissions, denials, or detailed explanations as required by Rule 36;

22. Produce a Rule 26(b)(5)-compliant privilege log for all documents and communications withheld on privilege grounds across all discovery responses, including as to Grant RFP Nos. 39, 60, 96, 106 through 110, 119, 122, 124, and 126; Grant RFA No. 6; Prado INT2 Nos. 1 and 2; Cepero INT No. 20; and Cepero RFP No. 28;

23. Remove all unilateral confidentiality conditions not grounded in a Court order from all responses in both consolidated matters, including at minimum Grant RFP Nos. 9, 21, 22, 23, 25, 26, 27, 28, 29, 30, 32, 33, 36, 38, 39, 87, 111, 112, 113, 123, 129, and 132 through 148, and Cepero RFP Nos. 8, 9, 18, 19, 23, 26, 30, 31, 33, 34, 35, 36, 38 through 40, and

Roger W. Feicht, Esq.
Nalani Alesia Gordon, Esq.
May 7, 2026
Page 30

> 51; and if StratAir seeks protection for sensitive information, file an appropriate motion under Rule 26(c);

24. Provide a substantive response to Prado INT2 No. 1 identifying all persons with relevant factual knowledge, summarizing the subject matter of their knowledge, and providing available contact information, subject to any agreed or court-ordered protective order; and

25. Provide a substantive response to Prado INT2 No. 2 identifying any retained testifying experts by name and area of expertise, with full Rule 26(a)(2) disclosures to follow the Court's scheduling order.

I remain available to meet and confer by telephone or videoconference at your earliest convenience and hope to resolve these disputes without Court intervention. However, if StratAir declines to withdraw its improper objections, provide complete supplemental responses, and produce all responsive documents, Plaintiffs will seek appropriate relief from the Court, including a discovery hearing, an order overruling StratAir's objections, compelling better responses and full document production, and awarding fees and costs under Rule 37.

Very truly yours,

P. Brooks LaRou, Esq.
brooks@fairlawattorney.com

cc:     Lisa Musco (LMusco@gunster.com)
        Lisa Hagan (LHagan@gunster.com)