## EXHIBIT "A": AREAS OF INQUIRY

### I. StratAir's Corporate Structure and Business Operations

1. StratAir's corporate structure, ownership, management hierarchy, and operations at its Miami warehouse and cargo handling facility, including the number of employees, independent contractors, temporary workers, and individuals engaged through staffing agencies, as well as employment organizational reporting relationships, and the roles and responsibilities of such individuals during the period from July 2022 through January 2025.

2. StratAir's business operations, services, and clients, including its relationship with Amazon.com and the nature of freight, warehousing, and ground handling services provided at its Miami location.

3. StratAir's total workforce size and employee headcount in Miami-Dade County during 2022, 2023, and 2024, including the total number of individuals engaged to perform work for StratAir at any point in each calendar year.

### II. Plaintiffs' Employment

4. All aspects of each Plaintiff's employment with StratAir — including Ivan Grant, Alex Laffita Ortiz, Henry Pinto Sumoza, Eyonny Prado Duran, Luis Rodriguez Ceruto, Luis Same Gonzalo, and Raisyl Cepero Garcia — including hire dates, job titles, essential job duties, work schedules, compensation, benefits, performance history, attendance records, and any discipline or write-ups issued during each Plaintiff's employment.

5. All performance evaluations, employee warning notices, verbal counseling, and written discipline issued to each Plaintiff, as well as the factual basis for each disciplinary action.

6. StratAir's policies and procedures governing the supervision, evaluation, discipline, and termination of individuals performing warehouse and cargo handling duties, including any progressive discipline policies in effect during the relevant period.

7. The identity of all individuals who supervised any Plaintiff at any time during their employment with StratAir, including each such individual's job title, job duties, dates of supervision, and reporting relationship to each Plaintiff, as well as the scope of their supervisory authority, including any involvement in evaluating performance, issuing discipline, approving leave, or making or influencing decisions regarding compensation, scheduling, or termination.

### III. Plaintiff Cepero Garcia's Medical Condition, Disability, and Leave Requests

8. The date(s) on which StratAir first learned of Raisyl Cepero Garcia's tongue condition, biopsy, and cancer diagnosis; the identity of all persons at StratAir who received that information; all communications among StratAir employees, supervisors, or HR personnel regarding Mr. Cepero Garcia's medical condition or leave requests; and StratAir's internal response to each request for time off Mr. Cepero Garcia made in December 2023 and January 2024.

9.     Whether StratAir considered Raisyl Cepero Garcia to have a disability or serious health condition, how StratAir characterized his condition internally, and the factual basis for any determination StratAir made regarding his eligibility for FMLA leave or ADA accommodation.

## IV. Plaintiff Grant's November 2023 Termination and Reinstatement

10.    The circumstances surrounding Ivan Grant's initial termination in or around November 2023, including the stated reason for that termination, the internal complaint of discrimination he made to HR following that termination, the investigation StratAir conducted, and the decision to reinstate him.

11.    Ivan Grant's August 2023 leave request to attend his daughter's wedding in Germany, including whether it was approved or denied, by whom, and all documentation relating to that request and StratAir's response.

12.    The lost wages Ivan Grant suffered as a result of his November 2023 termination, and any compensation StratAir provided or declined to provide for that period.

## V. The Termination Decision

13.    The identity of all persons who participated in, influenced, or made the decision to terminate each Plaintiff's employment; the date each decision was made; all reasons considered or relied upon; the sequence of events on or around each termination date, including, with respect to Raisyl Cepero Garcia, the calls between Wilson Dorado and Mr. Cepero Garcia on January 22, 2024; and all documents reviewed by any decision-maker in connection with each termination decision.

## VI. StratAir's Alleged Performance Justification for Each Plaintiff's Termination

14.    All facts supporting StratAir's contention that any Plaintiff's job performance was "unsatisfactory" or deficient, including the specific tasks or metrics at issue, who measured or observed the alleged deficiencies, when those assessments were made, how they were documented, whether each Plaintiff was informed of any deficiencies before termination, and whether any performance-related documentation was created before the termination decisions were made.

## VII. The January 2024 Reduction in Force (RIF)

15.    The business reason(s) for StratAir's January 2024 RIF, including the identity of the customer(s) that reduced cargo flights, when StratAir first learned of that reduction, the projected financial impact, when the RIF decision was made, and who authorized it.

16.    The process by which individuals were selected for inclusion in the January 2024 RIF, including the criteria used; whether any written scoring rubric or matrix was used; the definition and scope of the decisional unit; the identity of all individuals involved in, participating in, influencing, reviewing, or approving the selection process (including StratAir's supervisors, managers, human resources personnel, and any other decision-

makers); the role each such individual played in the process; and the specific factual basis for the selection of each of the individuals who were included.

17. The ages, positions, seniority, performance histories, disability status, and leave history of all individuals who were selected for the January 2024 RIF and all individuals who were not selected, including all statistical data StratAir compiled regarding the protected characteristics of those individuals.

18. The timing of each terminated individual's notification of the RIF and the actual dates on which each Plaintiff's employment was separated.

19. Whether any individuals terminated in the January 2024 RIF were offered or given the opportunity to be rehired, and the criteria used to make any such determinations.

## VIII. Comparative Employee Treatment in the RIF

20. For each individual working in the same department as, or performing functions similar to, any Plaintiff who was retained and not selected for the January 2024 RIF: their age, race, national origin, disability status, performance history, disciplinary records, attendance records, seniority, and whether they had requested or taken medical leave within the six months preceding the RIF.

21. All individuals under the age of 40 who held the same or similar positions as Plaintiffs, who received verbal warnings or written discipline prior to the January 2024 RIF, and who were nonetheless retained rather than selected for the layoff.

22. StratAir's hiring or engagement of new individuals to perform work at its Miami location in the months preceding the January 2024 RIF, including the ages, positions, and start dates of all persons who began working for StratAir during 2023—whether classified as employees, independent contractors, temporary workers, or individuals supplied through any staffing agency—and whether any such individuals were retained or continued performing work for StratAir after the RIF while more senior Plaintiffs were terminated.

## IX. Post-RIF Staffing and Replacement of Eliminated Duties

23. Whether any duties previously performed by any Plaintiff were subsequently performed by any other worker — whether a StratAir employee, temporary worker, independent contractor, or staffing agency personnel — after the January 2024 RIF; StratAir's use of staffing agencies and independent contractors at its Miami location from September 2023 through January 2025; and any decisions regarding hiring and/or engagement of workers made after the RIF for positions performing substantially similar functions to those held by any Plaintiff.

## X. Discriminatory Statements and Conduct

24. All statements alleged by Plaintiffs to have been made by supervisors Armando Portales Viera and Jose (LNU) that reflect or concern age-based bias, animus toward older

employees, or a preference for younger workers, including StratAir's knowledge of, investigation into, and response to such alleged statements.

25. The employment status, dates of employment, job titles, and job duties of all individuals who supervised any Plaintiff, as well as all human resources personnel employed by or acting on behalf of StratAir during the relevant period, including any complaints made against such individuals, any investigations conducted, any discipline imposed, and the circumstances surrounding any suspension, termination, or separation of those individuals, including whether any such actions occurred after, and the extent to which they were related to, the filing of any Plaintiff's charge(s) of discrimination.

26. All complaints of age, race, national origin, disability discrimination, or FMLA retaliation made by any individual performing work for StratAir at its Miami location from 2021 through 2025, all investigations StratAir conducted in response, and the outcome of each.

## XI. Race and National Origin Discrimination

27. The racial and national origin composition of StratAir's Miami warehouse workforce during 2022 through 2025, including the number of Black, Hispanic, and non-Hispanic employees in warehouse and cargo handler roles and the seniority and retention status of each.

28. StratAir's knowledge that Ivan Grant was the only Black employee on the night shift and the only employee from the Virgin Islands on the night shift, and any consideration given to his race or national origin in connection with any employment decision affecting him.

## XII. FMLA Policies, Compliance, and Administration

29. StratAir's policies and procedures for identifying, processing, and administering FMLA leave during the relevant period; who at StratAir was responsible for FMLA compliance; the training those individuals received; and StratAir's general practices for notifying employees of their FMLA rights.

30. Whether StratAir provided any Plaintiff — including Raisyl Cepero Garcia and Luis Rodriguez Ceruto — with an FMLA eligibility notice, rights-and-responsibilities notice, or designation notice, and the circumstances under which any such notices were or were not issued.

31. All StratAir employees who requested FMLA leave, disclosed a serious health condition, or requested a disability-related accommodation from January 2023 to the present; whether each request was granted; and whether any such employee was included in or excluded from the January 2024 RIF.

32. All communications, including text messages, WhatsApp messages, and emails, between Luis Rodriguez Ceruto and his supervisors or HR regarding his requests for time off, and StratAir's internal response(s) to each request.

33. Whether StratAir qualified as a covered employer under the FMLA during Plaintiffs' employment, including the total number of employees employed within 75 miles of its Miami facility at all relevant times, and StratAir's determination (or failure to determine) that it was a covered employer subject to FMLA obligations.

## XIII. ADA Policies, Reasonable Accommodation, and the Interactive Process

34. StratAir's policies and procedures regarding disability accommodation and the interactive process during the relevant period; who at StratAir was responsible for handling accommodation requests and how those individuals were trained; whether StratAir engaged in any interactive process with Raisyl Cepero Garcia or any other Plaintiff; and all disability accommodation requests made by StratAir employees from January 2023 to the present and how each was handled.

## XIV. HR Policies, Employee Handbook, and Anti-Discrimination Procedures

35. StratAir's employee handbook(s) and written HR policies in effect during each Plaintiff's employment, including EEO, anti-discrimination, anti-retaliation, attendance, medical leave, progressive discipline, and RIF selection procedures, and StratAir's practices regarding implementation and enforcement of those policies, including any training provided to supervisors.

## XV. Communications Regarding Plaintiffs

36. All communications — oral and written, including emails, text messages, and messages on WhatsApp or any other messaging platform — among StratAir management, supervisors, and/or HR personnel regarding any Plaintiff's medical condition, leave requests, job performance, or termination from September 2023 through February 2024.

## XVI. Prior EEOC Charges and Employment Discrimination Claims

37. All EEOC charges, discrimination complaints, administrative claims, or lawsuits filed against StratAir in the past five years alleging disability discrimination, FMLA interference or retaliation, age discrimination, race or national origin discrimination, or any other form of employment discrimination, including the charges filed by Plaintiffs, and StratAir's responses thereto.

## XVII. Financial Condition and Business Justification for the RIF

38. StratAir's financial condition in the year preceding the January 2024 RIF, including revenue, budgets, profit-and-loss data, headcount projections, and all documents presented to management or ownership regarding the financial necessity of the workforce reduction; any cost-comparison analyses conducted between direct employees and contractors; and all financial projections or analyses relating to the anticipated impact of any reduction in Amazon cargo delivery flights.

39. All communications between StratAir and Amazon.com (or any Amazon entity) from January 2023 through March 2024 regarding anticipated reduction in cargo delivery

flights, any contract modifications, volume projections, staffing requirements, and any instructions or guidance from Amazon regarding StratAir's workforce levels, including the identity of all Amazon representatives with whom StratAir communicated and the form of all such communications (email, text, WhatsApp, or otherwise).

40.     The total number of cargo delivery flights serviced by StratAir and the total work volume handled at its Miami facility, on a month-by-month basis from July 2022 through January 2025, including the total number of flights serviced and work volume; StratAir's total revenues on a month-by-month basis during the same period; and all documents, records, or reports reflecting flight schedules, cargo throughput, staffing levels, and financial performance during that time.

41.     Any actual reduction in cargo delivery flights and work volume experienced by StratAir from Amazon or any other customer from July 2022 through January 2025, including month-by-month flight data, cargo volume metrics, and revenue figures; the dates on which any actual reduction in flights or work volume first occurred; whether any reduction in flights or work volume had already occurred prior to the January 2024 RIF; and any documents, reports, or financial records reflecting actual (as opposed to projected) changes in StratAir's revenues, workload, or staffing needs during that period.

## XVIII. StratAir's Affirmative Defenses

42.     The factual and evidentiary basis for each affirmative defense raised by StratAir in its Answer to the Complaint or Amended Complaint in either action, and all documents and witnesses supporting each such defense.

## XIX. Damages and Mitigation

43.     Each Plaintiff's final rate of pay, benefits (including 401(k), health, dental, and vision), seniority, and any other compensation at the time of their respective terminations.

44.     StratAir's computation of any claimed offset or set-off against any Plaintiff's damages, including any contention that a Plaintiff failed to mitigate damages, and the factual basis and evidence supporting any such contention.

## XX. Insurance

45.     StratAir's insurance coverage applicable to these matters, including the carrier, policy numbers, applicable policy limits, and any reservation of rights issued in connection with this litigation.

## XXI. Document Retention and Preservation

46.     StratAir's document retention policies and record-keeping practices for personnel files, leave records, HR communications, and payroll data; any litigation hold implemented in connection with these lawsuits or the EEOC charges filed by any Plaintiff, including when any such hold was put in place, what categories of documents were preserved, and the identity of all document custodians.

### XXII. Discovery Responses and Document Collection

47.   The factual basis for StratAir's responses to Plaintiffs' Interrogatories and Requests for Admission, including all facts, witnesses, and documents supporting any denial, qualification, or affirmative contention.

48.   The process by which StratAir identified, collected, and searched for documents responsive to Plaintiffs' Requests for Production, including the identity of all custodians whose files were searched, the data sources reviewed, the methods used to conduct the search, and the steps taken to ensure the completeness of StratAir's document production, as well as the non-privileged process by which information was gathered and provided for the preparation of StratAir's written discovery responses.